Junior Ray HOUSTON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-76-946.

Court of Criminal Appeals of Oklahoma.

Aug. 5, 1977.

Sterling L. Hansen, Norman, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Jerry Earl Benson, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Junior Ray Houston, hereinafter referred to as defendant, was charged, tried to the court and convicted in the District Court, Cleveland County, Case No. CRF-76-423, for the offense of Burgla-

ry in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1435. His punishment was fixed at a term of ten (10) to thirty (30) years under the direction and control of the Department of Corrections of the State of Oklahoma. From said judgment and sentence, a timely appeal has been perfected to this Court.

The first witness for the State was Richard Glenn Dennis, who lived next to the residence allegedly burglarized in the case at bar. Mr. Dennis testified that at approximately 11:00 p.m. on July 25, 1976, he was aroused by neighborhood dogs barking excessively. Upon moving to the back door to investigate, he looked toward the residence next door at 113 East Keith Street in Norman, Oklahoma, and noticed movement inside. Knowing the occupants of the residence to be on vacation, the witness stated he then telephoned the police.

The State then called Arley Lawrence Anderson, Jr. He testified that, Bennie Currie, the owner of the residence at 113 East Keith, was his father-in-law. The witness further stated that Mr. Currie had asked him to feed and water their dog and also check the mail while they were on vacation. Mr. Anderson stated that he had been at the residence early in the evening on July 25, for that purpose and had entered the house with a key provided by the Curries. At that time, he noticed that all the windows were still securely nailed shut, just as the Curries had left them. The witness noticed nothing out of place. At approximately 12:00 p.m. that evening, he was called back to the residence because of the reported burglary. Upon returning, he noticed that two southwest windows had been pried open and the screens removed. After entering the residence, he observed that items in the house had been scattered, and many of the drawers had been dumped. The witness stated that only he and his wife had permission to enter the residence while the Curries were on vacation.

Bennie Wyman Currie, the owner of residence at 113 East Keith, was next called to testify. He testified to substantially the same facts as Mr. Anderson had previously.

By agreement of defense counsel Reginald Gaston, Assistant District Attorney for Cleveland County, was called to testify out of sequence. He identified State's Exhibit Nos. 1 and 2, as certified copies of two judgments and sentences on a plea of guilty entered by the defendant, and he stated that he was present when both guilty pleas were entered. The witness stated that the copies reflected that the defendant was represented by counsel at both the entries of guilty pleas. Thereupon, State's Exhibit Nos. 1 and 2 were entered into evidence without objection.

Officers Dennis Fox and George Dodson were the next witnesses for the State. They testified to substantially the same facts surrounding their response to a possible burglary in progress call at approximately 11:20. Both officers arrived at the residence at the same time and proceeded into the front yard of the adjoining house, where they met Mr. Dennis. Mr. Dennis showed the officers the house. When the officers approached the residence at 113 East Keith, they noticed a southwest window with the screen off which had been pried open. After calling for backup units, Officer Dodson observed two individuals moving around in the house with household goods in their arms. The officer identified the defendant, in-court, as one of the subjects he saw inside the house. After backup units arrived and secured the area, Officer Dodson called through the open window on the southwest side for the subjects inside to step into the living room, in plain view. Thereupon one subject, a Mr. Carey Childress, stepped into the living room and surrendered to the officers. The subject inside the house identified in-court as the defendant, remained in the bedroom despite orders from the officers to surrender. Finally, after Officer Dodson had called many times and secured a shotgun, the defendant surrendered. Both officers testified that the defendant appeared to be acting normally at this time, and was not under the influence of any intoxicants. They both described the condition of the residence as being, "ransacked."

Roger Marquis, the officer who transported the defendant to the jail stated that the defendant did not appear to be under the influence of anything nor was his speech slurred.

Carey Childress was then called to testify. He stated that he accompanied the defendant to the house in question to, "steal a stereo." Upon arrival, the witness and the defendant forced open a southwest window and entered the house. He further stated that it was the defendant's idea to steal the stereo and that neither he, nor the defendant had any liquor or drugs on the day of the burglary. Mr. Childress' testimony relating to the events that occurred after the police arrived were substantially the same as those testified to by the officers. Following the introduction of the aforementioned evidence, the State rested its case.

Defense counsel then requested a medical examination of the defendant, ". . . [T]o determine if he is intoxicated." (Tr. 102). Even though the defendant had been in the custody of the sheriff during the trial, the trial judge allowed the defendant to testify, ". . . [F]or the limited purpose of an evidentiary hearing, as to whether he is intoxicated." (Tr. 105). Upon taking the stand, the defendant admitted that he was, "crashing out," on "downers," that he had taken at approximately 7:00 a.m. that morning. On cross-examination, the defendant explained that when he was arrested and taken into custody, he had several pills hidden in the heels of his shoes and had been taking them since he had been taken into custody a week before. He further stated that he had been taking drugs regularly since 1969. The defendant answered in the affirmative questions as to whether he was able to assist his counsel in his defense, whether he knew the nature of the charges against him, and whether he was aware of what was going on around him. Following the defendant's testimony, the trial judge, while denying the motion for a medical examination, allowed a recess for approximately four to five hours so that counsel could, ". . . [H]ave the benefit of his clients best ability in presenting whatever defense he may have . . . ." (Tr. 113). When the court reconvened that afternoon, the defendant's demurrer to the evidence was overruled. The defense then presented testimony from two witnesses, saving the defendant for last so that the court would be sure the defendant was not under the influence of any drug when he was to testify.

The defense first called Rena Houston, the defendant's mother. She testified that she believed her son had a liquor and drug problem. She saw him the afternoon of the burglary, and asked him to go to Oklahoma City with her, but he declined. She stated that her son appeared to be under the influence of drugs or alcohol when she saw him that day.

The next witness to testify was Peggy Blalock, the defendant's ex-wife. She stated that she saw the defendant at her house, the day of the burglary, drinking for most of the day. At approximately 9:30 or 10:00 p.m., the witness and one Floyd Blalock, took the defendant to Carey Childress' house. Ms. Blalock stated that, at that time, the defendant appeared to be intoxicated. Following this testimony, the court recessed until the next day to assure that the defendant was not under the influence of any intoxicants or drugs.

The following day, the defendant was called to testify. He testified to substantially the same facts that Ms. Blalock, had relating to the events that took place at her house on the day of the burglary. He further stated that after he arrived at Mr. Childress' house, he stayed there for approximately fifteen minutes, whereupon he, and Mr. Childress started walking toward the University campus. While walking, the defendant and Mr. Childress smoked several marijuana cigarettes. After walking a few blocks, the defendant realized that he was in front of his cousin's house, the location of the burglary. He then proceeded to the southwest window, pried it open and went in and laid on the bed because, "he was pretty messed up." (Tr. 139). The defendant stated that he did not have permission

to enter the house. He testified that he was awakened by the officers racking their shotguns and hollering, "come on out." After he heard this, he came out of the bedroom and was taken into custody by the officers who testified earlier. The defendant further stated that he had previously plead guilty to two charges of Uttering a Forged Instrument and had been advised of his rights and represented by counsel on those charges.

Mr. Carey Childress was called as a rebuttal witness. His testimony was not substantially different than that which he had given earlier.

■ As defendant's first assignment of error, he asserts that because a doubt arose as to his present sanity at trial, the judge was required to impanel a jury to inquire into that fact, pursuant to 22 O.S.1971, § 1162 and § 1163. This assignment of error is without merit. No doubt arose as to the defendant's present sanity, defense counsel merely asked for, ". . . [A]n evidentiary hearing as to whether he, (the defendant), is intoxicated or not." (Tr. 102). The trial judge properly granted the evidentiary hearing and the defendant testified to his voluntary consumption of concealed "downers," thereby rendering him under the influence of the drug. However, the defendant stated that he was able to assist in his defense and he was aware of the circumstances leading to the charges against him. Following the evidentiary hearing, the trial judge observed that the defendant was, ". . . [I]n some condition other than normal . . ." and granted a recess until that afternoon to allow the effects of the drug to wear off. When court reconvened that afternoon, defense counsel voluntarily presented testimony from two witnesses. Following this testimony, the trial judge granted a recess until the next day at 1:00 p.m., to insure that the defendant would be sober when he took the stand. The defendant had been assigned to the custody of the sheriff during the trial.

Upon all the facts and circumstances, this Court is of the opinion that the trial judge made every effort to insure that the rights of the defendant were protected, and absent a clear abuse of discretion, the trial judge's ruling will not be overturned on appeal. *Johnson v. State*, 73 Okl.Cr. 370, 121 P.2d 625 (1942).

■ The defendant next asserts that the sentence was harsh and excessive as a result of passion and prejudice on the part of the trial judge. Pursuant to the Habitual Criminal Act, 21 O.S.Supp.1976 § 51, the defendant was sentenced to an indeterminate term of from ten (10) to thirty (30) years' imprisonment. This punishment is well within the range set by the legislature. Further, this Court will not modify a sentence unless it is so excessive that it shocks the conscience of the Court. *Gardner v. State*, Okl.Cr., 532 P.2d 1200 (1975). Upon a close reading of the facts, the sentence imposed was not excessive, nor given under passion or prejudice, therefore this assignment of error is without merit.

■ The defendant next argues that he was found guilty of burglarizing a specific place different than that charged in the amended information and for which he was bound over for trial at the preliminary hearing. The defendant, in both the original and amended information, was charged with burglarizing, "*a certain building* located at 113 East Keith in the City of Norman, Cleveland County, Oklahoma." (Emphasis Added). The trial court, after hearing the evidence presented, found the defendant guilty of burglarizing an "*unoccupied residence* at 113 East Keith, in the City of Norman, Cleveland County, Oklahoma." (Emphasis Added). This Court held in *Hatton v. State*, 96 Okl.Cr. 227, 252 P.2d 170 (1952), in the first paragraph of the Syllabus:

"The gist of the sufficiency of an indictment or information is not whether it might possibly have been made more certain, but whether it alleges every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet."

We are of the opinion that the defendant was sufficiently advised of the location of the crime charged and found guilty as advised.

█ The defendant finally urges that the court erroneously used prior felony convictions upon a plea of guilty to enhance his punishment without there being an affirmative showing that he had been advised of his rights. This Court stated in *Copenhaver v. State*, Okl.Cr., 431 P.2d 669 (1967) and *Smith v. Oklahoma City*, Okl.Cr., 513 P.2d 1327 (1973), that when prior felony convictions on pleas of guilty are used to enhance punishment, an affirmative showing that the defendant was represented by counsel and advised of his rights, before he entered his guilty pleas, is essential.

In the case at bar, the defendant testified that he had previously plead guilty to two felony crimes. The defendant also admitted that he had been represented by an attorney on both counts. (Tr. 144). No appeals were filed in those cases and Assistant District Attorney Gaston testified that the defendant was represented by counsel when he personally observed the defendant pleading guilty to these crimes.

The record on appeal clearly establishes in both judgments and sentences on pleas of guilty, the defendant, "having been duly informed of the nature of the charge and having been duly arraigned thereon, and having duly and properly entered a plea of guilty to the crime of uttering a forged instrument after having been duly advised of all legal and constitutional rights and the effect of such plea," plead guilty to both felonies. Defendant's final assignment of error is without merit.

For the foregoing reasons the judgment and sentence appealed from is hereby AFFIRMED.

BRETT, J., concurs.