In January 1989 Freddie Hyatt delivered a bag containing 494.5 grams of cocaine to an undercover agent of the Federal Bureau of Investigation and received $15,000 in exchange in Tallapoosa County, Alabama. He was arrested shortly thereafter. In July 1989 Hyatt was indicted in the United States District Court for the Middle District of Alabama on three counts of distribution of a controlled substance in violation of Title 21, United States Code, Section 841(a)(1). He was found guilty and ultimately was placed on three years' probation including six months in a community correction facility and six months of home detention.
In October 1989 the State of Alabama Department of Revenue (department) issued a final jeopardy assessment and penalty in the amount of $198,000 against Hyatt, pursuant to the Steve Hettinger Drug Enforcement Act, codified at Ala. Code 1975, §§ 40-17A-1 through -16. Hyatt appealed the assessment to the Tallapoosa County Circuit Court. The department and Hyatt filed motions for summary judgment. The case was submitted for judgment on a joint stipulation of facts. The trial court issued a judgment in favor of the department confirming the assessment. Hyatt appeals.
Section 40-17A-4, Code 1975, provides that no dealer may possess, distribute, sell, transport, transfer, import, or otherwise use controlled substances without paying a tax on the substances as confirmed by a stamp or other official insignia. The Act defines a "dealer" as one who traffics or possesses more than 42.5 grams of marijuana or more than seven grams of any other controlled substance. § 40-17A-1(3). Depending on the type of drug, the Act provides a varying rate of tax and makes the dealer subject to an additional penalty equal to the amount of tax imposed if the tax is not paid. §§ 40-17A-8 and -9.
Hyatt initially contends that the trial court erred in holding that the final jeopardy assessment was properly executed. He suggests that the assistant commissioner of revenue, who signed the final jeopardy assessment, did not have the authority do so. He claims that only the commissioner of revenue has such authority.
Section 40-17A-12, Code 1975, provides that "[t]hecommissioner shall assess a tax based on personal knowledge or information available to the commissioner." (Emphasis added.) Section 40-2-44 provides that "[t]he assistant commissioner of revenue shall perform such duties as are assigned to him by the commissioner of revenue. . . . He shall have and exercise in all matters the full authority granted by law to the commissioner of revenue if the commissioner of revenue shall have delegated such duties and authority to him in writing."
James M. Sizemore, Jr., commissioner of revenue, stated in an affidavit that he delegated by memorandum various duties to the assistant commissioner and that he had specifically granted authority to the assistant commissioner to enter any and all final assessments of tax. He further stated that a final jeopardy assessment is a final assessment of tax.
Hyatt claims that the memorandum does not comply with the statute, as it is does not say who issued the memorandum; that it does not delegate authority to the assistant commissioner, but merely provides that the assistant commissioner is to sign certain documents; and that, even if the memorandum *Page 718 
does comply with § 40-2-44, the assistant commissioner is authorized to issue only final assessments and orders setting aside final assessments, not final jeopardy assessments.
We find that the memorandum, signed across the top by the commissioner, is sufficient to comply with § 40-2-44. Implicit in the delegation of authority to sign final assessments is the responsibility of the assistant commissioner to determine the facts and issues necessary to enter a final assessment. We further find that the assessment under § 40-17A-12(a) is a final assessment as referred to in the commissioner's memorandum.
Hyatt further claims that the memorandum, which was issued before the assistant commissioner was appointed assistant commissioner, did not transfer authority to him upon attaining that position. He suggests that the statute refers to the person, not to the office. He also claims that jeopardy assessments for failure to pay an alleged tax on the possession of controlled substances did not exist at the time the memorandum was issued and, therefore, could not have been contemplated.
We find that a reasonable reading of the statute refers to the delegation of authority to the office of assistant commissioner, not to the individual person. We further consider that the authority to issue final assessments also contemplates final assessments that may not have been due at the time of the memorandum.
The final jeopardy assessment was properly executed and is valid.
Hyatt next contends that the tax is in actuality a criminal penalty and not a tax. He complains that the tax is punitive in nature and was "imposed upon him without any of the constitutional guarantees normally associated with a criminal proceeding."
Hyatt employs a shotgun approach in arguing this issue. Because of such an approach, he presents a nebulous argument. For instance, he fails to demonstrate specifically how his constitutional rights have been violated. He refers to a violation of his due process rights, but fails to differentiate between a procedural or a substantive violation. Such differentiation, however, is unnecessary in view of our recent determination that the Act is not violative of a taxpayer's right to procedural or substantive due process. Briney v. StateDep't of Revenue, 594 So.2d 120 (Ala.Civ.App. 1991). InBriney we determined that the Act and its application was rationally related to a legitimate State purpose and that the appellate procedure provided for in the Act constitutes an adequate and meaningful opportunity to be heard. Sisson v.Triplett, 428 N.W.2d 565 (Minn. 1988).
Hyatt insists that the tax is a criminal penalty rather than a true tax because the tax is grossly disproportionate to the value of the drug in possession and imposed as a result of a violation of law. Such allegations ordinarily accompany a double-jeopardy argument. Hyatt has refrained from couching his argument in this case in that context. However, we consider that the issue was decided by this court in Briney. It was determined there that the liability under the Act was a remedial tax measure and was not "fundamentally punitive." Whether an assessment is properly a tax or a penalty has been the subject of treatises and has been an issue in both state and federal cases. See Gould, Criminal Law and the FifthAmendment: Taxation of Illegal Drugs, 3 Ann.Surv.Am.L. 541 (1989); United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892,104 L.Ed.2d 487 (1989); Kennedy v. Mendoza-Martinez,372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); United States v.Sanchez, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950); Harrisv. State Dep't of Revenue, 563 So.2d 97 (Fla.Dist.Ct.App. 1990); Sisson v. Triplett; State v. Davis, 787 P.2d 517 (Utah App. 1990). The line between remedial and punitive is often a narrow one.
We consider the Act in this case to be remedial in that it is an effort to recover from those who reap great profits from their illegal and deadly transactions, taxes which they would otherwise escape. Such is the declared purpose of the tax. § 40-17A-16, Code 1975. A penalty for nonpayment *Page 719 
of the tax, though heavy in this case, is common to all taxpayers who fail to pay their lawful taxes. Briney; §40-18-49, Code 1975; 26 U.S.C.A. §§ 6651 through 6662 (West 1989).
Hyatt contends that he was not a "dealer" in possession of a "controlled substance" as defined by the Act.
Section 40-17A-1(3) defines "dealer" in the following manner:
 "[A] person who in violation of Alabama law
manufactures, produces, ships, sells, uses, distributes, transports, or imports into Alabama or in any manner acquires or possesses more than . . . seven or more grams of any controlled substance. . . ." (Emphasis added.)
Section 40-17A-1(2) defines "controlled substance" as:
 "[A]ny drug or substance, whether real or counterfeit, as defined in the Alabama Uniform Controlled Substances Act, that is held, possessed, transported, transferred, sold, or offered to be sold in violation of Alabama laws. . . ." (Emphasis added.)
Hyatt insists that the legislative intent was to impose the tax upon those convicted of violating Alabama law. He asserts that the Act is not applicable in this case because he was not convicted of violating Alabama law.
Hyatt's assertion is without merit. As noted previously, the tax commissioner may assess the tax based upon "personal knowledge or information" available to him. We have previously determined that such assessment may be made "regardless of whether the dealer has been convicted in a criminal proceeding for possession of contraband." State Dep't of Revenue v.Drayton, [Ms. Dec. 13, 1991], 1991 WL 260876 (Ala.Civ.App. 1991).
Hyatt illegally possessed and distributed a controlled substance (cocaine). Based upon "personal knowledge or information," the commissioner imposed the tax. It makes no difference that Hyatt was convicted in federal court rather than in an Alabama court because such conviction is not necessary to the imposition of the tax.
Hyatt next contends that the Act levies a tax on "marijuana and controlled substances" and not on the dealer in possession of the drug. He insists, therefore, that he is not liable to pay the tax.
Hyatt's argument is based on a piecemeal construction of the Act and is without merit. Viewing the Act as a whole, we find the language to be clear and unambiguous and incapable of any other construction. The Act does not levy a tax on marijuana or controlled substances. It clearly taxes dealers in possession of marijuana and controlled substances.
Hyatt finally contends that he did not have an opportunity to purchase the stamps as required by the Act. He asserts that because of time constraints it was impossible for him to purchase the stamps after receiving the substance and prior to his resale and arrest.
In brief, Hyatt asserts that he did not have the opportunity to purchase the stamps because he did not receive the substance until 7:00 p.m. on a Friday evening and he was arrested shortly thereafter. There is no evidence in the record to support this factual assertion. The only "evidence" concerning the time element of possession is in Hyatt's brief. The trial court found the argument to be unsupported by the evidence and unpersuasive. We consider it also spurious.
The assessment against Hyatt is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur. *Page 720