John Kennedy WHITE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–93–1156.

Court of Criminal Appeals of Oklahoma.

Feb. 23, 1995.

Order Denying Rehearing March 29, 1995.

Rehearing Denied April 13, 1995.

Michael Hoover, Mitchell Lee, Oklahoma City, for defendant.

Greg Jenkins, Asst. Dist. Atty., Atoka, for the State.

Michael Wilson, Asst. Appellate Indigent Defender, Norman, for appellant.

Susan B. Loving, Atty. Gen. of Oklahoma, Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CHAPEL, Vice Presiding Judge.

John Kennedy White was tried by jury in the District Court of Atoka County, Case No. CRF–92–126. He was convicted of Trafficking in Illegal Drugs in violation of 63 O.S. 1991, § 2–415, and Unlawful Possession of a Controlled Dangerous Substance without a Tax Stamp in violation of 68 O.S.1991, § 450.4, both after former conviction of a felony. In accordance with the jury's recommendation, the Honorable Doug Gabbard, II, sentenced Mr. White to Life without Parole on the trafficking count and twenty years imprisonment on the possession charge. White has perfected his appeal of these convictions. We affirm.

On November 14, 1992, Officer Layton, a Stringtown police officer, stopped a vehicle for traveling 73 mph in a 55 mph zone. White was the passenger in the vehicle. During the stop, Layton instructed White to open the glove compartment to retrieve the insurance verification; Layton saw a plastic bag that looked like it contained "cake soap." When Layton returned to his unit to issue the driver a traffic citation, he noticed that the driver's signature on the ticket did not match the signature on the license. When Layton questioned the driver about the license data (age, height, etc.) the driver answered incorrectly, prompting Layton to call for backup.

Officer Payton arrived and the two officers obtained a search waiver from the driver. Layton maintained he searched the car only because the driver lied to him, even though this happened after he saw the plastic bag. Another officer, Hurd, arrived as well to help with the search. Layton searched the driver's side and told Hurd, who was searching the passenger side, to look for the plastic bag he had seen earlier in the glove box. Layton discovered the plastic bag in the console behind the ashtray.[1] The parties stipulated at trial that the bag contained approximately 43 grams of cocaine. When White and Omar Hawkins, the driver, were arrested, both men gave the officers false names.

Hawkins was the sole witness for the defense.[2] Hawkins testified that before he was pulled over, the glove box had not ever been opened in White's presence. Hawkins testified that the drugs found in the car were his, not White's, and that White had neither the right nor the power to dispose of the drugs in any way; however, he conceded he never told anyone this until his case was resolved.

■ In his first proposition of error, White argues there was insufficient evidence of trafficking to support his conviction. He claims Layton's testimony was insufficient

---

1. Although no one saw White in actual physical custody of the bag, no one else occupied the vehicle except White between the time Layton initially saw the bag in the glove box and the time it was found behind the ashtray. Layton testified he was sure it was the same bag he had seen in the glove box.

2. Hawkins was charged with White for possession of the drugs, pleaded guilty to all charges arising from the transaction, and received a twenty year sentence.

because it was not corroborated, and in the alternative, that even with Layton's testimony, there was insufficient evidence of dominion and control over the drugs to sustain his conviction. White's first argument that officer testimony in narcotics cases should require corroboration, much like rape cases and cases in which accomplice testimony is used, is groundless.[3] White cites no caselaw requiring such corroboration, and we are aware of none. This Court declines to extend the rules regarding corroboration of testimony to officer testimony in narcotics cases. The truth or falsity of Layton's testimony was a credibility question for the jury, and the jury believed him. This Court will not reexamine the credibility of witness testimony, as it is within the jury's exclusive province.[4]

 White next argues that there was insufficient evidence of dominion and control over the drugs to sustain his conviction for trafficking. This argument is also without merit. The elements of trafficking are knowing and intentional possession of 28 grams or more of a mixture or substance containing a detectable amount of the controlled dangerous substance cocaine or coca leaves.[5] The

elements of possession are (1) knowing and intentional; (2) possession; and (3) a controlled dangerous substance.[6] Because both Hawkins and White occupied the car in which the drugs were found, possession cannot be presumed by White's presence in the location where the drugs were found. However, joint possession can be proven by circumstantial evidence of dominion and control over the thing possessed.[7] Moreover, possession may be either actual or constructive, and need not be exclusive "as long as there is proof that the defendant knowingly and willfully shared the right to control the dangerous substance."[8]

 White argues there was insufficient evidence of dominion and control because the evidence, when taken in the light most favorable to the state, showed circumstantially that he merely relocated Hawkins' drugs from the glove compartment to underneath the car's ash tray. He argues an attempt to relocate drugs is not sufficient proof of dominion and control because it is circumstantial evidence which does not exclude every reasonable hypothesis other than guilt.[9] We disagree.

3. White's argument is based on the idea that police officers in general, and Layton in particular, have a motive to lie because they have an interest in upholding the validity of their arrests.

4. *Luna v. State*, 829 P.2d 69, 73 (Okl.Cr.1992). Accord, *U.S. v. McIntyre*, 997 F.2d 687 (10th Cir.1993), cert. denied, — U.S. —, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994). See also, *Gilmore v. State*, 855 P.2d 143 (Okl.Cr.1993) (even sharply conflicting testimony in a rape case does not trigger the need for corroboration); *Spuehler v. State*, 709 P.2d 202, 204 (Okl.Cr.1985) (even where there is a sharp conflict in the evidence, this Court will not interfere with a verdict reached by a jury who considered competent evidence, weighed that evidence, and determined the facts).

5. 63 O.S.1991, § 2–415(C)(2).

6. *Doyle v. State*, 759 P.2d 223, 224 (Okl.Cr.1988); 63 O.S.1991 § 2–402.

7. *Burnett v. State*, 760 P.2d 825, 827 (Okl.Cr. 1988), *citing Brown v. State*, 481 P.2d 475 (Okl. Cr.1971).

8. *Howard v. State*, 815 P.2d 679, 683 (Okl.Cr. 1991). *See also, Smith v. State*, 698 P.2d 482, 485 (Okl.Cr.1985) ("[p]ossession may be estab-

lished though another has actual custody if one willfully and knowingly shares the right to control the contraband.").

9. The state erroneously argues that Officer Layton's testimony that the bag found behind the ashtray was the same one he saw in the glove compartment is direct evidence. This is not direct evidence that White moved the bag. "Direct evidence is that which points immediately to the question at issue, and which, if believed, proves the existence of the fact in issue *without inference or presumption.*" *Mayes v. State*, 887 P.2d 1288, 1301 (Okl.Cr.1994) (emphasis added), citing *Nichols v. State*, 418 P.2d 77, 84 (Okl.Cr.1966). Accordingly, direct evidence would have been testimony that White was seen in possession of the bag or was seen moving it. In contrast, all the state's evidence was such that the central point in issue, *i.e., did White move the bag, must be inferred. Mayes,* supra. Because the inference must be made that since White was the only one in the car, he was the one who moved the bag, his conviction was supported by circumstantial evidence. When only circumstantial evidence supports a conviction, the evidence must exclude every reasonable hypothesis except that of guilt. *Mitchell v. State*, 884 P.2d 1186 (Okl.Cr. 1994) (where the state's evidence is entirely circumstantial, the evidence must exclude every

This Court recently found that a passenger in a car which was under surveillance for drug activity was in possession of the drugs in question where the juvenile driver tossed a small plastic pill bottle into the car and the passenger picked it up and tried to hide it in the glove box.[10] We find *Carolina* to be dispositive of this case.[11] White's action in moving the drugs from the glove box to behind the ash tray demonstrated his knowledge that contents of the bag were contraband, as he would not have attempted to hide them otherwise; it also established that he exercised dominion and control over the drugs. Accordingly, the state presented sufficient evidence of dominion and control to sustain White's conviction for trafficking. This proposition must fail.

■ In his second proposition of error, White argues the Oklahoma Drug Tax Stamp Act, which requires a tax stamp to be immediately affixed to illegal drugs, is unconstitutional because (1) it compels defendants to incriminate themselves in order to defend against its charge, (2) it is impossible to comply with, and (3) it infringes on the state and federal protections against self-incrimination.[12] White's challenge of the Oklahoma Drug Tax Stamp Act presents a question of

first impression in our State.[13] In analyzing this issue, we are mindful of the principle that statutes are presumptively constitutional, and the burden of proving unconstitutionality rests with the party challenging the statute.[14] It should also be noted that "the unlawfulness of an activity does not prevent its taxation." [15]

■ White's first claim that the statute is unconstitutional because defendants must incriminate themselves in order to defend against it is baseless. He claims an accused cannot deny being in possession of drugs and at the same time, in order to defend against a tax stamp violation charge, admit that he affixed a tax stamp to them. White concludes that this creates a "Catch–22" situation wherein any defense to this charge would cause a defendant to at least admit knowledge of the drugs' presence. He asserts that this would constitute a Fifth Amendment violation, as the privilege against self-incrimination does not distinguish between degrees of incrimination and thus to compel a defendant to admit knowledge of narcotics is unconstitutional, even if knowledge alone would not support a conviction.[16]

reasonable hypothesis except that of guilt). *See also, Davis v. State*, 885 P.2d 665 (Okl.Cr.1994) (because state of mind in malice aforethought murder prosecution was proved by circumstantial evidence, the evidence must have been sufficient to rule out all reasonable hypotheses except that appellant acted with malice aforethought), *citing Riley v. State*, 760 P.2d 198 (Okl.Cr.1988).

10. *Carolina v. State*, 839 P.2d 663, 665 (Okl.Cr. 1992).

11. Although there was direct evidence of possession in *Carolina*, and no direct evidence supporting any of the essential elements of Trafficking here, the evidence in this case, when viewed in the light most favorable to the state, still excludes every reasonable hypothesis except that of guilt.

12. U.S. Const. amend. V; Okla. Const. art. II § 27.

13. The highest courts in states with virtually identical drug tax stamp statutes have upheld them against various constitutional challenges. Those states include: Alabama, Colorado, Florida, Idaho, Illinois, Iowa, Kansas, Michigan, Minnesota, Montana, Ohio, Pennsylvania, South Dakota, Texas, Utah and Wisconsin. Claudia G.

Catalano, Annotation, *Validity, Construction, and Application of State Laws Imposing Tax or License Fee on Possession, Sale, or the Like, of Illegal Narcotics*, 12 A.L.R.5th 89, 95–100.

The following challenges have been raised to these statutes unsuccessfully in other states: that the statutes (1) allow assessment founded on drugs unconstitutionally seized; (2) violate double jeopardy; (3) violate the privilege against self-incrimination; (4) impose cruel and unusual punishment; (5) violate procedural due process; (6) violate substantive due process; (7) violate equal protection; (8) violate various state constitutional provisions. *Id.* at 103.

14. *Newton v. State*, 824 P.2d 391, 396 (Okl.Cr. 1991); *S.A.H. v. State*, 753 P.2d 381, 383 (Okl.Cr. 1988).

15. *Department of Revenue of Montana v. Kurth Ranch*, —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994) (citations omitted); *Marchetti v. U.S.*, 390 U.S. 39, 44, 88 S.Ct. 697, 700, 19 L.Ed.2d 889 (1968).

16. *See, Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). *See also, Doe v. U.S.*, 487 U.S. 201, 108 S.Ct. 2341, 101

White's theory that defending against a tax stamp charge requires admission of at least knowledge of the drug's presence is faulty. The error in his reasoning lies in his belief that the only way to defend against this charge is to admit he affixed the stamp. The statute does not require the dealer to purchase the tax stamp. Anyone may purchase the stamp. Therefore, if a stamp is on the drugs, that does not mean the defendant purchased it. One may deny knowledge and ownership of the drugs, claiming they belong to someone else, and consistently deny knowledge of the tax stamp that "someone else" affixed to them. Because one may prove a stamp was present on the drugs without incriminating one's self, this argument is meritless.[17]

Additionally, White challenges the Drug Tax Stamp Act by contending compliance with its mandates is impossible. He claims that dealers will never be able to immediately affix the stamp upon acquisition as the statute requires because (a) the drugs will never be purchased at the Oklahoma Tax Commission and (b) the OTC is the only place where the tax stamp can be purchased. An Alabama appellant raised a similar argument in *Hyatt v. State Dept. of Revenue.*[18] Hyatt claimed it was impossible for him to affix the stamps as required by the Act be-

cause he received the drugs at 7:00 p.m. on a Friday evening and was arrested shortly thereafter.[19] The *Hyatt* Court found nothing in the record to support his contention and accordingly "found the argument to be unsupported by the evidence and unpersuasive. We consider it also spurious."[20] Similarly, White presented no evidence at trial that it would have been impossible to affix a tax stamp to the drugs located in Hawkins' car. Accordingly, this claim presents nothing but unsupported speculation and lacks merit.

White's final challenge to § 450.4 is that its immunity provisions do not adequately protect defendants against self-incrimination.[21] The Fifth Amendment provides in pertinent part, "nor shall any person. . . . be compelled in any criminal case to be a witness against himself."[22] The United States Supreme Court established a three-part analysis which must be conducted when determining the validity of a tax on illegal behavior: (1) the regulated activity must be in an area permeated with criminal statutes and the regulation or tax directed toward a select group inherently suspect of criminal activity; (2) the obligation to register or pay tax must create a real and appreciable, rather than a mere imaginary and unsubstantial hazard of self-incrimination; and (3) compliance with the regulation must prove a signifi-

L.Ed.2d 184 (1988) (5th Amendment protects not only against testimony that is itself incriminating, but also against testimony or statements that might reasonably lead to the discovery of other incriminating evidence).

17. Moreover, the construction we give this statute in the discussion below (*see, infra* at 989) provides absolute immunity from prosecutors using any information obtained by compliance with the tax statute in unrelated prosecutions (other than for enforcement of the tax act itself) such as for Possession, Distribution, Trafficking, etc. This reading of the statute is in keeping with the legislature's obvious intent. *See,* 68 O.S.1991, § 450.4(D) which prohibits a stamp denoting payment of the tax from being used against the taxpayer in any criminal proceeding, except to enforce the tax act itself. Accordingly, defendants are sufficiently protected against the use of information gathered by their compliance with the act being used against them in violation of U.S. Const. amend. V and Okla. Const. art. II § 27.

18. 597 So.2d 716 (Ala.Civ.App.1992).

19. *Id.* at 719.

20. *Id.*

21. White argues this statute violates the federal Fifth Amendment and Oklahoma's corollary provision in separate subpropositions. He contends that even if the Oklahoma Drug Tax Act complies with the federal Fifth Amendment, it still violates the corollary provision in Oklahoma's Constitution because the federal Fifth Amendment requires only use immunity, while Oklahoma citizens are guaranteed both use and transactional (derivative-use) immunity. However, the federal Fifth Amendment does in fact provide both use and derivative-use immunity. *See, e.g., Florida Dept. of Revenue v. Herre,* 634 So.2d 618, 621 (Fla.1994); *State v. Durrant,* 244 Kan. 522, 769 P.2d 1174, 1183 (1989), cert. denied, 492 U.S. 923, 109 S.Ct. 3254, 106 L.Ed.2d 600 (1989). Therefore, as the federal and Oklahoma constitutions provide the same Fifth Amendment protections, the analysis which follows will apply to both.

22. U.S. Const. amend. V.

cant link in the chain of evidence tending to establish guilt.[23] The Court emphasized that the "central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination."[24] If all three prongs are met, the tax will be held to have violated an accused's rights against self-incrimination.

In *Marchetti*, the statutory system for taxing wagers was held to have violated Marchetti's rights against self-incrimination because all three prongs were met: wagering was an area "permeated with criminal statutes" and those who engaged in it were a group "inherently suspect of criminal activities"; Marchetti's risk of self-incrimination if he complied with the statute was substantial and not merely "trifling" because information obtained according to these laws was readily available to law enforcement and commonly used as evidence in criminal prosecutions; and because Marchetti was confronted with a "comprehensive system of federal and state prohibitions against wagering activities, he was required, on pain of criminal prosecution, to provide information which he might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant 'link in a chain' of evidence tending to establish his guilt."[25]

The issue then is whether Oklahoma's Drug Tax Stamp Act withstands scrutiny under the *Marchetti* analysis. Other states with virtually identical drug tax statutes have analyzed them under *Marchetti* and have concluded the statutes do not offend the Fifth Amendment. These courts found sufficient distinction between the tax stamp statutes and the fatal wagering statutes at issue in *Marchetti* where the tax stamp statutes provided for immunity from unrelated prosecutions. Even if the immunity provided in the statutes was not broad enough to grant protection co-extensive with the Fifth Amendment,[26] the other courts held that the legislature, by granting some immunity, evidenced no intent to enact the statute for the purpose of aiding prosecutions. Thus the statutes were given saving constructions wherein they were read to grant as much protection as the Fifth Amendment.[27]

23. *Marchetti*, 390 U.S. at 47–48, 88 S.Ct. at 702–03.

24. *Marchetti*, 390 U.S. at 53, 88 S.Ct. at 705.

25. *Marchetti*, 390 U.S. at 48, 88 S.Ct. at 703.

26. "[T]he privilege against self-incrimination may not properly be asserted if other protection is granted which 'is so broad as to have the same extent in scope and effect' as the privilege itself." *Marchetti*, 390 U.S. at 58, 88 S.Ct. at 708, *citing Counselman v. Hitchcock*, 142 U.S. 547, 585, 12 S.Ct. 195, 206, 35 L.Ed. 1110 (1892).

27. The *Marchetti* Court declined to give the wagering tax statutes a saving construction, deciding it would be inappropriate since it was "quite plain" Congress intended any information received when a taxpayer complied with the statutes to be given to interested prosecuting authorities for use against the taxpayer in criminal prosecutions. Therefore, imposition of use-restrictions would have precluded effectuation of a significant element of Congress' purposes in adopting the wagering taxes. *Marchetti*, 390 U.S. at 59, 88 S.Ct. at 708.

The following states have upheld statutes which are strikingly similar to the Oklahoma Drug Tax Stamp Act: *State v. Garza*, 242 Neb. 573, 496 N.W.2d 448, 455 (1993) (saved Tax Stamp Act by holding legislature intended, by enacting confidentiality provisions, that any writ-ten information obtained by taxpayer complying with act was part of the report and therefore "directly" confidential, and any evidence obtained through the use of this confidential information was "derivatively" confidential, rendering all such information inadmissible in any criminal prosecution against the taxpayer, except when independently obtained or when used in a prosecution to enforce the Tax Stamp Act itself); *State v. Godbersen*, 493 N.W.2d 852 (Iowa 1992) (statute imposing an excise tax on unlawful dealing in controlled and other substances withstood *Marchetti* analysis, where statute contained confidentiality provisions—worded exactly like Oklahoma's—and protected a dealer's anonymity—again with same language used in Oklahoma's Act); *State v. Heredia*, 172 Wis.2d 479, 493 N.W.2d 404, 407 (App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2386, 124 L.Ed.2d 289 (1993) (unlike the statutes in *Marchetti*, Wisconsin "occupational tax" statute on illegal drugs provided that "[d]ealers may not be required to provide any identifying information in connection with the purchase of stamps," and thus self-incrimination was not compelled and statute was valid under both federal 5th Amendment and Wisconsin's corollary provision); *Zissi v. State Tax Com'n of Utah*, 842 P.2d 848, 857 (Utah 1992) (held tax statute facially unconstitutional under 5th Amendment, but saved it by imposing limiting construction that there could be no use of **any** information gained as a result of a stamp purchaser's compliance with the statute to estab-

On the other hand, only taxing statutes which provided no immunity and/or evidenced a legislative intent that information obtained by a taxpayer's compliance with them to be used in unrelated criminal proceedings or investigations have been held to violate the Fifth Amendment.[28]

Oklahoma's tax stamp statute, unlike those which have failed under the Fifth Amendment, contains immunity provisions and meets all three prongs of the *Marchetti* analysis: (1) illegal drugs are within "an area permeated with criminal statutes," and the statute thus targets a group "inherently suspect of criminal activities";[29] (2) through its confidentiality and anonymity provisions,[30] the statute does not require taxpayers to provide information which they might reasonably suppose would be made available to prosecuting authorities;[31] and (3) given the narrowing construction we assign to the statute below, there is no possibility information gathered by compliance with the statute will

lish a link in the chain of evidence in a subsequent drug prosecution) (emphasis in original); *Briney v. State Dept. of Revenue*, 594 So.2d 120, 122–23 (Ala.Civ.App.1991) (neither second nor third elements of *Marchetti* test met where state's Marijuana and Controlled Substance Excise Tax Act prohibited information obtained by one's compliance with the Act to be revealed by Commission employees or agents, and where statute rendered any such information inadmissible in any unrelated criminal proceeding unless independently obtained); *State v. Smith*, 120 Idaho 77, 813 P.2d 888, 890 (1991) (held 1989 version of Illegal Drug Stamp Act violated the 5th Amendment because there was no penalty for disclosure of information by tax commission employees or agents, and no express prohibition against using the information obtained through the purchase of stamps in criminal proceedings or investigations; however, 1991 version of statute which provided confidentiality for stamp purchasers, penalties for those who divulged this information, and prohibitions against its use in criminal investigations or proceedings held constitutional); *Durrant*, 769 P.2d at 1183 (saved Drug Tax Act which did not grant absolute immunity by construing it to grant both use and derivative-use immunity, meaning no information obtained through compliance with the Act, or obtained through use of information procured by compliance with the Act, would be admissible in any criminal prosecution, other than the enforcement of the act itself); *Sisson v. Triplett*, 428 N.W.2d 565 (Minn.1988) (state's Marijuana and Controlled Substance Tax, together with applicable revenue department regulations, provided sufficient confidentiality provisions to withstand claim that statute violated federal and state protections against self-incrimination).

28. *See*, *Leary v. U.S.*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (federal Marijuana Tax Act held unconstitutional as violative of *Marchetti* where act required taxpayer to identify him/herself and the information was available to authorities on request); *Grosso v. U.S.*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) (federal wagering tax act unconstitutional because act did not impose restrictions on use of information obtained through compliance with the act, and such information was intentionally made available to state and federal agencies to assist in their prosecution of other crimes); *Marchetti*, supra (same); *Florida Dept. of Revenue*, 634 So.2d 618, 620 (held Florida taxing scheme did not satisfy 5th Amendment where confidentiality provisions were undermined by another section which required the Department to provide any information contained in a tax return to state and federal law enforcement officials as long as those officials presented a subpoena—violated principle established in *Marchetti* that taxpayers may not be required to disclose information which they "might reasonably suppose would be available to prosecuting authorities"); *State v. Roberts*, 384 N.W.2d 688, 690–91 (S.D.1986) (South Dakota "Luxury Tax on Controlled Substances and Marijuana" held unconstitutional where tax information acquired under the act could be released to law enforcement officials; court declined to read the act in such a manner that return information would be fully confidential, as clear intent of legislature was to provide an extra penalty on possessors of controlled substances through unconstitutional means).

29. *Marchetti*, 390 U.S. at 47, 88 S.Ct. at 702 (citation omitted). *Accord, Durrant*, 769 P.2d at 1181 ("It appears clear that the drug tax act does target a selective group inherently suspect of criminal activity—drug dealers, or those who illegally possess large quantities of marijuana and/or other controlled substances.")

30. The immunity provisions in 68 O.S.1991 § 450.1 *et seq.* provide that purchasers of the stamp, referred to as "dealers," are not required to give their name, address, social security number, or other identifying information on the "reporting forms" which are provided for the reporting and payment of the taxes levied by the Act. 68 O.S.1991, § 450.4(C). Furthermore, no information contained in the report may be used against the dealer in any criminal proceeding, unless independently obtained, except in a prosecution under the Act itself. *Id.* Subsection D also prohibits a stamp denoting payment of the tax from being used against the taxpayer in any criminal proceeding, except to enforce the tax act itself.

31. *Marchetti*, 390 U.S. at 48, 88 S.Ct. at 703.

"prove a significant 'link in a chain' of evidence tending to establish.... guilt." [32]

■ The immunity/anonymity language in 68 O.S.1991, §§ 450.1 *et seq.* resembles the language found in other states tax stamp statutes which have been upheld after the states' highest courts construed them to grant absolute immunity from unrelated prosecutions.[33] Similarly, the Oklahoma Drug Tax Stamp Act's immunity/anonymity provisions will be construed to extend both use and derivative-use immunity in order to comply with both the Fifth Amendment privilege against self-incrimination and Oklahoma's corollary provision.[34] Our legislature, by prohibiting the use of information received by compliance with statute "in any criminal proceeding," evidenced an intent to grant this broad immunity which the constitution demands.[35] Accordingly, the statute as construed grants immunity "so broad as to have the same extent in scope and effect" as the Fifth Amendment privilege itself and is therefore constitutionally sound.[36] We conclude that the Oklahoma Drug Tax Stamp

Act, as construed, violates neither state nor federal protections against self-incrimination.

■ In his third proposition of error, White argues there was insufficient evidence to prove he violated Oklahoma's Drug Tax Stamp Act. Officer Layton testified that he knows what an Oklahoma Tax Commission Controlled Dangerous Substance Tax Stamp is, knows what one looks like, and did not see one on the plastic bag found under the car's ashtray.[37] White now claims Layton's testimony is insufficient because the State presented no evidence that he "bothered to specifically look for a tax stamp." There are five elements which the state must prove to support a charge for Possession of CDS without a Tax Stamp Affixed; when the jury found White guilty of Trafficking, they necessarily found the existence of the first four elements: (1) knowing and intentional; (2) possession; (3) of 7 grams or more; (4) of cocaine.[38] The only element left for the jury's determination was the fifth element: "upon which there has been no Tax Commission tax stamp obtained, affixed and dis-

32. *Id.*

33. *See, e.g., Godbersen,* supra; *Durrant,* supra.

34. This construction is rendered pursuant to this Court's duty to harmonize acts of the legislature with the constitution. *State v. Saunders,* 886 P.2d 496 (Okl.Cr.1994); *State v. Pratt,* 816 P.2d 1149, 1151 (Okl.Cr.1991). See also, *Carroll v. State,* 620 P.2d 416, 417 (Okl.Cr.1980) ("statutes should be interpreted to produce reasonable results and should promote, instead of defeat, the purpose and the policy of the law."). Accord, *Durrant,* 769 P.2d at 1183 ("For a statutory grant of immunity to be coextensive with the privilege against self-incrimination, it must grant not only use immunity, or protection from the direct use of compelled incriminatory information, but also derivative-use immunity, which prohibits use of any such information for investigatory purposes leading to other evidence of criminal activity. This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute.").

35. *See, Durrant,* 769 P.2d at 1182 ("The act specifically grants protection against use of any information gained through compliance with the act in all criminal prosecutions, except those involving violations of the act itself. **Thus, it appears to us that the legislature contemplated**

**the act should provide for protection against any violation of the Fifth Amendment privilege against self-incrimination.") (emphasis added).**

36. *Marchetti,* 390 U.S. at 58, 88 S.Ct. at 708.

37. Unlike the Trafficking count which was supported by no direct evidence as to the essential elements of crime charged, this count is supported by direct evidence. Layton's testimony that he did not see a tax stamp on the bag is direct evidence which goes directly to one of the essential elements of the crime—that no tax stamp was affixed—and thus the *Spuehler* standard of review for sufficiency of the evidence is applicable since this count is supported by both direct and circumstantial evidence. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985). See also, *Dennis v. State,* 879 P.2d 1227, 1232 (Okl.Cr. 1994) (because trial evidence was both direct and circumstantial, test to determine sufficiency of evidence was whether rational trier of fact could have found the essential element of malice aforethought beyond a reasonable doubt); *Riley v. State,* 760 P.2d 198, 199 (Okl.Cr.1988) (where jury's verdict is based on both direct and circumstantial evidence, proper sufficiency test is whether rational trier of fact could have found guilt beyond a reasonable doubt).

38. (O.R. 101).

played."[39] This element does not require the state to establish that a witness specifically looked first for the stamp before testifying that he or she did not see it. Because Layton testified he saw no tax stamp on the bag, and White presented no evidence to the contrary, it cannot be said that when the evidence is viewed in the light most favorable to the state, a rational trier of fact could not have found the essential elements of this crime beyond a reasonable doubt.[40] The jury believed Layton's testimony, and this Court will not disturb its findings on appeal, as the jury is the exclusive judge of the weight of the evidence and the credibility of witness testimony.[41] This proposition is wholly without merit.

In his fourth proposition of error, White contends the trial court erred in denying his motion for a mistrial after Officer Patton injected an evidentiary harpoon into the proceedings. The prosecutor asked Patton what happened after he arrived at the scene, and Patton answered that he had White step out of the vehicle, he Mirandized him, and White said he didn't want to talk. At this point, the defense objected and moved for a mistrial on the grounds that this was an evidentiary harpoon commenting on the defendant's exercise of his right to remain silent. The trial court sustained the objection and admonished the jury as follows:

> .... a moment ago Officer Patton responded to a question by responding further than what he was actually asked. He did not respond to the question. And you are going to be admonished to totally disregard his answer, totally disregard his answer for all purposes.[42]

The trial court then denied White's motion for a mistrial, but did state that the defense could reurge the motion for a mistrial if they could provide caselaw supporting it. The motion was not reurged.

Any comment on a defendant's exercise of his right to remain silent is error.[43] However, error may be harmless where there is overwhelming evidence of guilt and the defendant is not prejudiced by the error.[44] Error may also be "cured" where the trial court sustains the defendant's objection and admonishes the jury.[45] In this case, any error caused by the officer's improper comment was cured when White objected and the jury was admonished to disregard the comment. This proposition must fail.

In his fifth proposition of error, White claims that prosecutorial misconduct denied him a fair trial. White complains of two questions asked of Hawkins during cross-examination and references to that line of questioning during closing argument. The two questions, both met with objections which were sustained by the trial court, implied to the jury that Hawkins was lying on behalf of White because of "prison politics" wherein people who "squeal" meet an impliedly ominous fate. Where an objection is sustained, no error will be found unless the verdict was affected.[46] In addition, the part of the prosecutor's closing argument which requested the jury use their common sense "as to what happens in prison to people who snitch on other people" was not met with an

39. (O.R. 101).

40. *Spuehler,* 709 P.2d at 203–04.

41. *Romano v. State,* 847 P.2d 368, 379 (Okl.Cr. 1993), *judgment aff'd,* —— U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994).

42. (Tr. 105).

43. *Guy v. State,* 778 P.2d 470, 474 (Okl.Cr.1989) (once accused has received Miranda warnings, his or her subsequent silence cannot be commented upon).

44. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

45. *McGregor v. State,* 885 P.2d 1366, 1383 (Okl. Cr.1994) (error which occurred due to prosecutorial misconduct was cured when trial court sustained appellant's objections and admonished the jury), *citing Shultz v. State,* 811 P.2d 1322, 1328 (Okl.Cr.1991); *Arnold v. State,* 803 P.2d 1145, 1150 (Okl.Cr.1990).

46. *Shepard v. State,* 756 P.2d 597, 599–600 (Okl. Cr.1988); *Parks v. State,* 746 P.2d 200, 202 (Okl. Cr.1987).

objection, and thus all but plain error has been waived.[47]

These sparse references to "prison politics" cannot be found to have determined the jury's verdict or to have denied White any constitutional or statutory right. Although the questions were improper and references to matters outside the record are not condoned by this Court, no prejudice resulted in this case. Hawkins testified that he was not afraid of White, nullifying the prosecutor's innuendos. Furthermore, evidence was presented that when Hawkins was arrested, he lied to the police about his identity, he was on probation, and he was also driving while his license was suspended. Additionally, evidence showed Hawkins lied under oath at his arraignment that his name was Lamont Lewis rather than Omar Hawkins. Hawkins' credibility was certainly damaged by the above evidence. The jury weighed Hawkins' testimony against the testimony of Officers Layton and Patton. It is highly unlikely that the jury would have believed Hawkins over the two officers had it not been subjected to the prosecutor's speculation about "prison politics." Therefore, this Court finds beyond a reasonable doubt that White was not prejudiced by the improper comments.[48] This proposition is without merit.

 In his final proposition of error, White claims his sentence was improperly enhanced. The record indicates that White stipulated during second stage that he in fact had the two convictions alleged on the second page of the information, that he was represented by counsel, and that they were final convictions.[49] White now challenges the validity of his two prior convictions on the grounds that they were entered pursuant to guilty pleas, but there is nothing in the record to show the pleas were entered knowingly and voluntarily.

White relies on *Staten v. State*,[50] wherein this Court held "when prior felony convictions on pleas of guilty are used to enhance punishment, an affirmative showing that the defendant was represented by counsel and advised of his rights, before he entered his guilty pleas, is essential.[51] *Staten* is clearly distinguishable from the instant case, as it did not involve a defendant who stipulated to the prior convictions.[52] Not only did White stipulate that he had two prior convictions and the representation of counsel when he received them, but he also stipulated the prior convictions were *final*. The stipulation to the finality of the convictions necessarily encompassed their validity (that they were entered knowingly and voluntarily). This is because such a stipulation is a concession that any claim to the contrary was either raised unsuccessfully on direct appeal, and thus barred by res judicata, or not challenged at all, and thus waived. White's final assignment of error lacks merit.

## DECISION

The Judgment and Sentence of the trial court is **AFFIRMED.**

JOHNSON, P.J., and LANE and STRUBHAR, JJ., concur.

LUMPKIN, J., specially concurs.

LUMPKIN, Judge, specially concurring:

I agree with my colleague's excellent opinion. I write separately to point out it is time for this Court to re-examine its outdated standard for reviewing cases composed entirely of circumstantial evidence.

---

**47.** *McGregor v. State*, 885 P.2d at 1383. Plain error denies the accused a constitutional or statutory right, and goes to the foundation of the case. *Id.*

**48.** *Id.*

**49.** The stipulation only informed the jury of two of White's prior felony convictions out of Texas; White in fact had five prior felony convictions, the other three out of New York and also drug related. (O.R. 29)

**50.** 738 P.2d 565 (Okl.Cr.1987).

**51.** *Id.* at 566, *citing Houston v. State*, 567 P.2d 1002, 1006 (Okl.Cr.1977) (emphasis added).

**52.** It should be noted that the record is unclear whether White in fact plead guilty to these priors or whether he received a conviction from a court or jury. However, even if he did plead guilty, the analysis would remain the same in a situation such as this where a stipulation to the finality of the prior conviction is entered.

If there is direct evidence as to the elements of a crime, the Court uses the *Jackson v. Virginia* standard adopted in *Spuehler v. State*, 709 P.2d 202, 203–04 (Okl.Cr.1985); however, if there is no direct evidence, the Court has used the "reasonable hypothesis" test. *Mitchell v. State*, 884 P.2d 1186, 1199 (Okl.Cr.1994). This case presents an excellent example why these separate standards are archaic.

Because there is no direct evidence as to the trafficking count, the Court has used the "reasonable hypothesis" test. Yet because the officer did not see a tax stamp on the bag, there is direct evidence of the crime, and the *Spuehler* test applies. The opinion's analysis is precisely correct under existing caselaw; but it seems senseless to apply one standard of review to one crime, yet apply another to the second, even though the exact same parties and parcels are involved.

This dichotomy stems from an antiquated notion on the relative value of certain types evidence that is long past its prime, and which should be allowed to undergo a quiet, well deserved death. There is no basis in logic or the law for differentiating between cases containing entirely circumstantial evidence and cases containing both direct and circumstantial evidence. I would therefore argue for a uniform standard.

This Court used federal caselaw to adopt a standard of review when dealing with cases involving both direct and circumstantial evidence. That standard was enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), as: "... whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *See Spuehler v. State*, 709 P.2d 202, 203–04 (Okl.Cr.1985). Indeed, this Court routinely uses federal rulings on evidence to resolve state questions on the same subject. *See e.g., Freeman v. State*, 767 P.2d 1354, 1355–56 (Okl.Cr.1988); *Robinson v. State*, 743 P.2d 1088, 1090 (Okl.Cr.1987).

The reasons for a different standard in a case containing entirely circumstantial evidence were previously based on the misconception that circumstantial evidence was somehow more suspect or less reliable than direct evidence. However, the United States Supreme Court has long since abandoned that idea, holding that there is no intrinsic difference between the two. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954). This Court has also come to the conclusion that one kind of evidence is to be given no more weight than the other at trial. *See* OUJI–CR 803 and cases cited in comments. It logically follows that the standard of review when dealing with the two types should likewise be the same. One federal court reasoned:

> It is true that much of the evidence in this case is circumstantial, and that at one time some courts expressed the view that in criminal cases based on circumstantial evidence a special rule required the district court to grant the motion for acquittal unless the circumstantial evidence excluded every reasonable hypothesis other than that of guilt.[1] The Supreme Court however, has said that "[c]ircumstantial evidence ... is intrinsically no different from testimonial evidence" and that "where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect." *Holland v. United States* (1954), 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150, 166. The same test, therefore, for judging the sufficiency of the evidence should apply whether the evidence is direct or circumstantial. Indeed, that is the prevailing rule in the federal courts today. *See* 2 C. Wright, Federal Practice and Procedure, § 467, at 258.

*United States v. Warner*, 441 F.2d 821, 825 (5th Cir.1971), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971). That court then reconciled some older Fifth Circuit cases with the Supreme Court's clear holding

---

**1.** [Footnote in original] *See, e.g., Riggs v. United States*, 5 Cir.1960, 280 F.2d 949, 955; *Cuthbert v. United States*, 5 Cir.1960, 278 F.2d 220, 224–225;

2 C. Wright, Federal Practice & Procedure § 467, at 257–58.

in *Holland,* rephrasing the substantial evidence test to "determine whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the accused's innocence," concluding that "whether the evidence be direct or circumstantial, the matter of the defendant's guilt is for the jury to decide unless the court concludes that the jury must necessarily have had a reasonable doubt." *Id. See also United States v. Henderson,* 693 F.2d 1028 (11th Cir.1982), in which the court modified the test, concluding that "[i]t is not necessary that the evidence exclude *every* reasonable hypothesis of innocence or be *wholly* inconsistent with every conclusion except that of guilty, *provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." Id.* at 1030 (emphasis added). Functionally, that is the same test this Court uses in reviewing a conviction based on both direct and circumstantial evidence.[2]

Therefore, this Court should abandon its old "reasonable hypothesis" test in favor of a unified *Spuehler*-type approach to conform with its already established view that one type of evidence is as reliable as the other. There is no logical reason to do otherwise.

### ORDER DENYING PETITION FOR REHEARING AND DIRECTING ISSUANCE OF MANDATE

John Kennedy White was tried by jury in the District Court of Atoka County, Case No. CRF–92–126. He was convicted of Trafficking in Illegal Drugs in violation of 63 O.S. 1991, § 2–415, and Unlawful Possession of a Controlled Dangerous Substance without a Tax Stamp in violation of 68 O.S.1991, § 450.4, both after former conviction of a felony. In accordance with the jury's recommendation, the Honorable Doug Gabbard, II, sentenced Mr. White to Life without Parole on the trafficking count and twenty years imprisonment on the possession charge.

■ This Court affirmed White's convictions by published opinion on February 23, 1995. White is now before this Court on a Petition for Rehearing, which is governed by Rule 3.14, *Rules of the Court of Criminal Appeals,* 22 O.S.Supp.1993, Ch. 18, App.[1] According to Rule 3.14, a Petition for Rehearing shall not be filed as a matter of course, but only for two reasons:

(1) That some question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or

(2) That the decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument.

■ White bases his petition for rehearing on a United States Supreme Court decision handed down subsequent to the filing of his brief-in-chief. *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) examined a Montana drug tax stamp statute and decid-

---

**2.** The reason for this is best stated in *Jones v. State,* 568 P.2d 837, 843–44 (Wyo.1977). In response to an appellant's contention the court should reverse his conviction because it did not exclude every reasonable hypothesis other than that of guilt, the court responded:

> An instruction explaining circumstantial evidence is for jury consumption. It does not in anywise change the standard of review in a criminal case by this court which remains as stated.... This court will "view the evidence in a light most favorable to the prosecution and determine questions of law as to whether there is substantial evidence, direct circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict".
> If we were to adopt the defendant's view of the evidence, this court would not only be in the

position of denying the jury's right to draw inferences from the facts, but would also be weighing the conflicts in the evidence and considering the credibility of the witnesses. This would be an improper exercise of appellate review and a usurpation of the function and authority of the jury. We decline the defendant's invitation to do so.
(citations omitted).

**1.** Mr. White tendered a **pro se** Petition for Rehearing which this Court will not consider. Rule 3.14 expressly states that the petition for rehearing **shall be made by the attorney of record.** Although White contends in his **pro se** petition that his counsel of record has withdrawn, he is clearly mistaken, as his counsel has filed the petition for rehearing which we now address.

ed it was penal in nature rather than merely a civil penalty. The Supreme Court decided that Montana's drug tax statute violated the Fifth Amendment's prohibition against Double Jeopardy since it allowed the commencement of tax collection proceedings after the taxpayer had already been convicted on the drug offense. The fatal aspect of the Montana drug tax was that it constituted a second punishment following the first punishment of a criminal offense. *Id.* at ——, 114 S.Ct. at 1948.

However, where a defendant is punished for both failing to pay a drug tax and committing a drug offense, all in the same proceeding, no Double Jeopardy problem exists. The Court expressly stated in *Kurth Ranch* that a drug tax "must be imposed during the first prosecution or not at all." *Id.* That is exactly the situation we upheld in White's direct appeal: he was tried and convicted of both the drug offense and the tax stamp violation in the same proceeding. *Kurth Ranch* changes neither the reasoning nor the result in our opinion.

The sole proposition White raises in his Petition for Rehearing does not meet the criteria set forth in Rule 3.14, as the decision upon which he relies is not controlling of the issues presented in his brief-in-chief.

IT IS THEREFORE THE ORDER OF THIS COURT that White's Petition for Rehearing be DENIED. The Clerk of the Court is directed to issue the mandate forthwith.

IT IS SO ORDERED.

WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 29th day of March, 1995.

/s/Charles A. Johnson
CHARLES A. JOHNSON, Presiding Judge

/s/Charles S. Chapel
CHARLES S. CHAPEL, Vice Presiding Judge

/s/Gary L. Lumpkin
GARY L. LUMPKIN, Judge

/s/James F. Lane
JAMES F. LANE, Judge

/s/Reta M. Strubhar
RETA M. STRUBHAR, Judge