STATE of Wisconsin, Plaintiff-Respondent,

v.

David L. STRASSBURG, Defendant-Appellant.

Court of Appeals

*No. 83–1857. Submitted on briefs May 17, 1984.—*
*Decided June 6, 1984.*
(Also reported in 352 N.W.2d 215.)

5.

6.

7.

8.

9.

For the defendant-appellant, the cause was submitted on the briefs of *Mark E. Wurtz* of *Dillman, Holbrook, Wurtz & Roth* of Sheboygan.

For the plaintiff-respondent, the cause was submitted on the brief of *L. Edward Stengel,* district attorney, and *James W. Frisch,* assistant district attorney, of Sheboygan.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. David L. Strassburg appeals from an order of the circuit court for Sheboygan county finding him to be a habitual traffic offender under ch. 351, Stats., thereby revoking his operating privileges for five years. In the main, his appeal attacks the constitution-

ality of the statute. We reject Strassburg's arguments and affirm.[1]

Between August 1, 1980 and February 22, 1983, Strassburg incurred twelve moving traffic violations. Nine of these violations took place in California, while the remaining three violations occurred in Wisconsin. Several of the California violations were litigated as bail forfeitures based on no contest stipulations. The offenses included speeding, reckless driving, driving too fast for conditions and operating a vehicle while under the influence of an intoxicant. Prior to his twelfth moving violation, Strassburg also acquired an additional conviction for a non-moving violation involving an unregistered vehicle.

The department of transportation issued a letter on February 11, 1983, reinstating Strassburg's operating privileges and indicating that these privileges were in good standing. On February 22, Strassburg was convicted of operating a motor vehicle without a valid driver's license, the violation having occurred on February 4, seven days before his reinstatement. On May 12, a petition was filed, commencing habitual traffic offender proceedings against Strassburg. On August 18, the circuit court for Sheboygan county determined that Strassburg was a habitual traffic offender within the meaning of sec. 351.02, Stats., and ordered that his operating privileges be revoked for five years in accordance with sec. 351.06, Stats. Strassburg appeals from this order.

On appeal, Strassburg argues that: (1) the department of transportation was estopped from bringing a

---

[1] This case was originally assigned for disposition by one judge as a case involving traffic violations pursuant to sec. 752.31(2)(c), Stats. Because ch. 351, Stats., has never been interpreted by Wisconsin appellate courts and because of the constitutional issues raised regarding that chapter, the chief judge, on motion of the court, designated the case to be heard by a three-judge panel pursuant to sec. 809.41(3), Stats.

proceeding under ch. 351, Stats., on the facts of this case; (2) the trial court abused its discretion by failing to exercise any discretion; (3) the state's delay in bringing the petition was a violation of due process, and (4) the habitual traffic offender statute is unconstitutional because it (a) is vague and indefinite, (b) is a violation of double jeopardy protection, (c) includes out-of-state convictions which might have required a lesser burden of proof than Wisconsin such that their use is a denial of equal protection of the laws, and (d) fails to provide for an occupational license, therefore amounting to cruel and inhuman punishment. We reject all of these arguments and, therefore, affirm the trial court's holding.

Strassburg first argues that the state should be estopped from bringing this habitual traffic offender action. First, Strassburg contends that the violation which placed him in the category of a habitual traffic offender under ch. 351, Stats., was the unregistered vehicle violation of July 26, 1982 and that, therefore, the habitual traffic offender action should have been brought at that time and not after the violation of February 22, 1983, almost one year later. Strassburg claims that he relied to his detriment on the department's non-action and that this reliance was reasonable and justifiable.[2] He asserts that he obtained insurance in contemplation of being able to drive. He also asserts that because of the non-action, he sought employment without regard to the possibility of being unable to drive to and from work.

This argument is without merit. Section 351.02(1) (b), Stats., defines "habitual traffic offender" as a person who has twelve or more convictions of *moving violations* within a five-year period. A registration violation

---

[2] The defense of estoppel is present if action or non-action on the part of the department includes reliance to the detriment of a person. *Department of Revenue v. Family Hospital, Inc.*, 105 Wis. 2d 250, 254, 313 N.W.2d 828, 830 (1982).

is clearly not a moving violation under sec. 351.02(1)
(b). Furthermore, inclusion of non-moving offenses,
such as registration violations, would be contrary to
the legislative intent of the habitual traffic offender
section. Section 351.01(2), Stats., states that one of the
purposes of this section is "[t]o deny the privilege of
operating motor vehicles to persons who by their conduct
and record have demonstrated their indifference for the
safety and welfare of others . . . ." Registration viola-
tions do not generally affect highway safety, and, there-
fore, they should not be included in the habitual traffic
offender action. Thus, Strassburg had no right to rely
on the state's "non-action" when the conviction for oper-
ation of an unregistered vehicle took place.

Strassburg claims, however, that even if we do not
accept his initial argument, the state should nonetheless
be estopped from bringing this action because of his
reliance on the department of transportation's corres-
pondence of February 11, 1983, stating that his operating
privileges were in good standing. We hold, however, that
Strassburg's reliance on this letter, if he did in fact rely
on it, cannot be considered reasonable. The letter was
issued only two weeks prior to the conviction which led
to the habitual traffic offender action. It is not reason-
able for Strassburg to assume that because he had ob-
tained reinstatement, he would be immune from a habitu-
al traffic offender action if subsequently convicted of an
earlier offense.

Strassburg's second contention is that the trial court
abused its discretion by failing to exercise any discretion
in the application of ch. 351, Stats. However, under
sec. 351.06, Stats., if the court finds that the person
named in the petition is the same person identified in the
driving record and that the driving record correctly
reflects the number of convictions required under the

definition of a habitual traffic offender, the court *"shall order the person's Wisconsin operating privilege revoked for a period of 5 years . . . ."* (Emphasis added.) The court is permitted no discretion in the administration of ch. 351, and, therefore, the trial court acted correctly.

Strassburg's third argument is that the state's action in this case was an unconstitutional violation of due process because of the delay in bringing the habitual offender proceeding. A delay in bringing an indictment or petition against a defendant may result in a violation of due process. For this delay to violate due process, however, it must be shown that the delay resulted in actual prejudice to the defendant or was an intentional device by the state to gain a tactical advantage over the accused or was brought solely to harass the accused. *State v. Kamalski,* 429 A2d 1315, 1319 (Del Super Ct 1981). First, there is no evidence that an unreasonable delay occurred in this case. The conviction that triggered the habitual traffic offender action occurred on February 22, 1983, and the petition against Strassburg was filed on May 3, 1983. This elapsed time of just over two months is quite reasonable considering the processing of the convictions that must take place before the petition is filed. Furthermore, even if the delay was unreasonable, there is no evidence that Strassburg was prejudiced by the delay or that the state used the delay to gain a tactical advantage or to harass Strassburg.

The major thrust of Strassburg's argument on appeal is his challenge to the constitutionality of the habitual traffic offender statute. Legislative enactments are presumed constitutional. *Mack v. State,* 93 Wis. 2d 287, 297, 286 N.W.2d 563, 568 (1980). This court will sustain a statute against attack if there is any reasonable basis for the exercise of the legislative power. *Id.*

■
With respect to the first constitutional argument that the statute is vague, we first note that a two-pronged test for statutory vagueness has been enunciated. A statute is considered not vague if: (1) the law gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that the person might act accordingly and the innocent will not be trapped without fair warning, and (2) the ordinance contains explicit standards in order to prevent arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). A third prong is indicated where freedom of speech concerns are present. In such cases, the boundaries of forbidden areas must be clearly marked so as to not inhibit the exercise of first amendment freedoms. *Id.* at 109. The third prong is not a necessary component in this case.

■
The habitual traffic offender statute meets both of the relevant vagueness tests. A person of ordinary intelligence is able to determine when he or she will fall under the provisions of ch. 351, Stats. It is difficult to imagine how the language could be made more clear. Strassburg contends that the statute is vague because of its failure to define "conviction" and asserts that people of ordinary intelligence may not consider pleas of no contest and forfeitures as tantamount to conviction. A typical motorist, however, should be able to conclude that a plea of no contest or a deposit forfeiture will result in a conviction. In fact, the Wisconsin uniform citations, handed out to offenders, explain that a forfeiture will result in demerits being assessed. Wis. Adm. Code, sec. MVD 21. Demerits are assessed upon conviction. Sec. 343.27, Stats. Furthermore, sec. 343.01(2) (a), Stats., defines "conviction" to include forfeitures of deposits and pleas of no contest for traffic citations.

When read in conjunction with the rest of the traffic code, including the habitual traffic offender chapter, sec. 343.01(2)(a) provides a clear definition of "conviction" that is not vague.

Regarding the second prong, because the trial court has no discretion in the enforcement of the habitual traffic offender statute, arbitrary and discriminatory enforcement is highly unlikely. We conclude that the vagueness argument fails.

Strassburg next argues that the statute violates the double jeopardy protection of the Fifth and Fourteenth Amendments of the United States Constitution because it imposes a second punishment for offenses where punishment has already been imposed. The argument misses the mark, however, because revocation of one's operating privilege is not a criminal punishment. The purpose of the proceeding is not to punish the offender but to remove from the highway one who is a potential danger to himself and other travelers. *State v. Carlisle*, 204 S.E.2d 15, 16 (N.C. 1974). *Cf. Steeno v. State*, 85 Wis. 2d 663, 671–72, 271 N.W.2d 396, 400 (1978). Public safety and protection are the primary concerns of these laws. *Kamalski*, 429 A.2d at 1318; *Anderson v. Commissioner of Highways*, 126 N.W.2d 778, 783–84 (Minn. 1964). In fact, sec. 939.12, Stats., states that "[a] crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both." Because a revocation of one's operating privileges is neither a fine nor an imprisonment, it does not satisfy the definition of a crime and does not result in a second criminal punishment in violation of the double jeopardy protection. It is not an invasion of a liberty interest but the extinguishing of a previously granted privilege.

Strassburg also argues that the statute is a violation of equal protection in that it includes out-of-state con-

victions that may not qualify as Wisconsin convictions. This argument is without merit. Proceedings under ch. 351, Stats., are based on records which the department of transportation is required to maintain. Under sec. 351.02(1)(c), Stats., offenses triggering the operative provisions of the statute include offenses under a law of another state which are in strict conformity with the laws of Wisconsin. Therefore, the department of transportation is required to maintain a record for Wisconsin motor vehicle operators showing Wisconsin convictions and convictions under similar laws of other states. There is a rebuttable presumption that public officers or boards have properly discharged their official duties. *Outagamie County v. Town of Brooklyn,* 18 Wis. 2d 303, 313, 118 N.W.2d 201, 206 (1962). Therefore, it is reasonable to presume that the department of transportation made a determination that the California violations were in conformity with the laws of Wisconsin and that any evidence to the contrary must come from the defendant. No such evidence was brought forth at trial; therefore, the California convictions were effectual in the Wisconsin habitual offender proceeding.

Strassburg's final constitutional attack on the statute is that the absence of a provision in ch. 351, Stats., allowing an occupational license for a habitual traffic offender constitutes cruel and unusual punishment. We have already said that the habitual traffic offender statute is a protective device; it is not a question of punishment. *Owens v. State ex rel. Vannatta,* 382 N.E.2d 1312, 1317 (Ind. Ct. App. 1978). Furthermore, operating a motor vehicle on public highways is not an inherent or civil right but is in the nature of a license or privilege. *Steeno,* 85 Wis. 2d at 671, 271 N.W.2d at 400. *See also Anderson,* 126 N.W.2d at 784. Therefore, there is no requirement that an occupational license be provided for a habitual traffic offender. "The potential for the

destruction of life and property is too great to permit irresponsible people, who have demonstrated a disregard for the safety of themselves and others, to drive on public thoroughfares." *Owens,* 382 N.E.2d at 1317.

*By the Court.*—Order affirmed.