STATE of Wisconsin, Plaintiff-Respondent,

v.

Pablo HEREDIA, Defendant-Appellant.†

Court of Appeals

*No. 91-2200-CR. Submitted on briefs October 8, 1992.—Decided November 24, 1992.*

(Also reported in 493 N.W.2d 404.)

†Petition to review denied.

479

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney

480

general, and *Ruth A. Bachman,* assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

FINE, J.  Pablo Heredia appeals his convictions for possession of cocaine with intent to deliver, as party to a crime, *see* secs. 161.16(2)(b)1, 161.41(1m)(c)5, 939.05, Stats.; bail jumping, *see* sec. 946.49(1)(b), Stats.; and failure to pay the tax on controlled substances mandated by chapter 139, subchapter IV, of the Wisconsin statutes, sections 139.87 through 139.96, Stats. He raises the following appellate issues: First, he claims that he was denied effective assistance of counsel because his trial lawyer did not seek dismissal of the charge alleging violation of subchapter IV. Heredia contends that the controlled-substances tax violates the constitutional rights against self-incrimination and to due process of law. Heredia also argues that the statute imposing the tax is impermissibly vague. Second, Heredia argues that there was insufficient evidence to support the jury's finding that he possessed the cocaine on which the tax was due, and that, therefore, his convictions for possession with intent to deliver and failure to pay the tax required by subchapter IV must be reversed. Third, he contends that there was insufficient evidence to support his conviction for bail-jumping, which was based on his convictions for possession with intent to deliver and failure to pay the tax required by subchapter IV. We affirm.

## I.

Heredia's convictions stem from the discovery of cocaine and drug paraphernalia in a house in Milwaukee during the execution of a search warrant. The law-enforcement officers searching the house also found let-

ters addressed to Heredia at the house's address, Here-dia's birth certificate, his expired Illinois driver's license, and male and female clothing in the master bedroom's closet and dressers. The house was rented by Margarita Calderon.

No one was home when the law-enforcement officers entered the house with the search warrant. Calderon arrived fifteen minutes after the entry. Heredia appeared shortly thereafter.

Much of the cocaine was found in the house's basement. One of the law-enforcement officers testified on cross-examination, and without objection, that during the course of the search Calderon told him that, according to the officer's testimony, "cocaine trafficking occurred in [the house's basement] and often times [Heredia] would go down there to do transactions."[1]

## II.

### A. *Effective Assistance of Counsel.*

Every criminal defendant has a Sixth Amendment right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish violation of this fundamental right, a defendant must prove two things: (1) that his or her lawyer's performance was deficient, and, if so, (2) that "the deficient performance prejudiced the defense." *Id.*, 466 U.S. at 687. Whether the defendant has proven these elements is a legal issue that we decide independently of the trial court's determination. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711, 715 (1985).

---

[1] Unobjected-to hearsay is, of course, admissible for its truth. *Schlichting v. Schlichting*, 15 Wis. 2d 147, 160, 112 N.W.2d 149, 156 (1961).

As noted, Heredia claims that he was denied effective assistance of counsel because his trial lawyers failed to challenge the constitutionality of the controlled-substances tax. Whether this failure was both deficient performance and prejudicial thus turns on whether the tax is constitutional. Heredia attacks the tax's constitutionality on three grounds: self-incrimination, due process, and vagueness. We analyze these matters in turn.

**1.** *Self-incrimination.*

Both the Fifth Amendment to the United States Constitution, and Article I, section 8, of the Wisconsin Constitution prohibit compelled self-incrimination.[2] The government may thus not require persons to disclose information that subjects them to the "hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53 (1968). The hazards, however, must be "substantial and 'real,' and not merely trifling or imaginary." *Ibid.* (Citations omitted.) Thus, in *Marchetti*, the Court held that federal statutes requiring persons engaged in professional gambling to pay an excise tax on the wagers they accepted, to pay an occupational tax, and to register with the Internal Revenue Service, *see id.*, 390 U.S. at 42-43, "significantly enhance[d] the likelihood" that those who

---

[2] The Fifth Amendment provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." Similarly, Article I, section 8(1), provides: "No person . . . may be compelled in any criminal case to be a witness against himself or herself." These provisions do not reach self-incrimination that is not "compelled." *See United States v. Doe*, 465 U.S. 605, 610 (1984) (subpoena of business records did not "compel" "testimony" so as to implicate Fifth Amendment protections); *State v. Schultz*, 152 Wis. 2d 408, 416, 448 N.W.2d 424, 427 (1989), *cert. denied*, 493 U.S. 1092 (compelled testimony inadmissible at trial for any purpose, applying both the Fifth Amendment and Article I, section 8).

complied with the provisions would be successfully prosecuted for violating state anti-gambling laws, *id.*, 390 U.S. at 54.

Chapter 139, subchapter IV, of the Wisconsin statutes requires that any dealer, defined at the time of Heredia's conviction as any person "who in violation of ch. 161 possesses, manufactures, produces, ships, transports, delivers, imports, sells or transfers to another person more than 42.5 grams of marijuana or more than 7 grams of any other controlled substance," pay an "occupational tax." Sections 139.87(2), 139.88, Stats. (1989-90).[3] The occupational tax is paid by purchasing stamps or other evidence of payment issued by the Department of Revenue. Section 139.89, Stats. Failure to pay the required tax subjects the violator to incarceration for a term not to exceed five years, a fine of not more than ten-thousand dollars, or both. Section 139.95(2), Stats. Unlike the situation in *Marchetti*, however, subchapter IV does not subject those who comply with its provisions to compelled self-incrimination. Simply stated, it is *payment* of the occupational tax that is compelled—*not the giving of information*. Thus, section 139.91, as it read at the pertinent time here, provided:

---

[3] The statutory definition of "dealer" was amended by 1991 Act 208, sec. 1, effective July 1, 1992, to read:

> "Dealer" means a person who in violation of ch. 161 possesses, manufactures, produces, transports, delivers, imports, sells or transfers to another person more than 42.5 grams of marijuana, more than 5 marijuana plants, more than 14 grams of mushrooms containing psilocin or psilocybin, more than 100 milligrams of any material containing lysergic acid diethylamide or more than 7 grams of any other schedule I controlled substance or schedule II controlled substance."Dealer" does not include a person who lawfully possesses marijuana or another controlled substance.

Section 139.87(2), Stats.

**Confidentiality.** The department may not reveal facts obtained in administering this subchapter, except that the department may publish statistics that do not reveal the identities of dealers. *Dealers may not be required to provide any identifying information in connection with the purchase of stamps.* No information obtained by the department may be used against a dealer in any criminal proceeding unless that information has been independently obtained, except in connection with a proceeding involving possession of untaxed marijuana or controlled substances or taxes due under s. 139.88 from the dealer.[4]

(Emphasis added.) Although Heredia argues that any information given to the department by a person paying the occupational tax may increase the likelihood of conviction for possession of untaxed marijuana or of controlled substances, that consequence would flow from information *voluntarily* supplied; as noted, section 139.91 specifically provides that "[d]ealers may not be required to provide any identifying information in connection with the purchase of stamps." The statute thus both contemplates and permits the anonymous payment of the tax. Accordingly, any "identifying information

---

[4] The section has been amended by 1991 Wis. Act 39, section 2540, to read as follows:

Confidentiality. The department may not reveal facts obtained in administering this subchapter, except that the department may publish statistics that do not reveal the identities of dealers. Dealers may not be required to provide any identifying information in connection with the purchase of stamps. No information obtained by the department may be used against a dealer in any criminal proceeding unless that information has been independently obtained, except in connection with a proceeding involving possession of schedule I controlled substances or schedule II controlled substances on which the tax has not been paid or in connection with taxes due under s. 139.88 from the dealer.

[disclosed] in connection with the purchase of stamps" evidencing payment, sec. 139.91, is disclosed voluntarily. Subchapter IV, therefore, violates neither the Fifth Amendment's, nor Article I, section 8's prohibitions against compelled self-incrimination. Heredia's trial lawyers were not deficient for failing to seek dismissal on that ground.

### 2. *Due Process.*

Both the Fourteenth Amendment to the United States Constitution, and Article I, section 8, of the Wisconsin Constitution guarantee every person "due process of law." Heredia argues that subchapter IV violates his constitutional right to due process because, he submits, the "occupational tax" is not a true tax, but merely an alternative method of suppressing crime. He relies on *Lipke v. Lederer*, 259 U.S. 557 (1922), where the Court invalidated, on due-process grounds, a prohibition-era tax on liquor. *Id.*, 259 U.S. at 562. Heredia's reliance is misplaced.

The "tax" at issue in *Lipke* was imposed by section 35 of the National Prohibition Act, which implemented the Eighteenth Amendment. *Id.*, 259 U.S. at 560-561. The Act made it illegal for any person to manufacture or sell liquor in violation of the statute. *See ibid.* Section 35 of the Act imposed the "tax":

> No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers.

*Id.*, 259 U.S. at 561. The Court, noting that the "tax" was triggered by evidence of the crime of unlawful manufacture or sale of liquor, held that the assessment was, in reality, a penalty. *Id.*, 259 U.S. at 561-562. The penal nature of the imposition, however, was not the due-process infirmity condemned. Rather, it was that the statute stripped persons of their rights to be heard *before* the imposition of any penalty. As the Court noted: "A revenue officer, without notice, has undertaken to assess a penalty for an alleged criminal act, and threatens to enforce payment by seizure and sale of property without opportunity for a hearing of any kind." *Id.*, 259 U.S. at 562.

Under subchapter IV, contrary to the situation in *Lipke*, there is no pre-hearing assessment, and no pre-hearing imposition of penalty. Penalty for failure to pay the occupational tax is imposed only after a defendant has had the full due-process rights of a trial, which Heredia has had here. The mere fact that the occupational tax is designed to aid law enforcement rather than raise revenue does not make it invalid. *See United States v. Sanchez*, 340 U.S. 42, 44 (1950) ("A tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed" or because "negligible revenue" is raised.) (upholding the Marihuana Tax Act). Although the tax imposed by the Marihuana Tax Act upheld in *Sanchez* was not, as here, "conditioned upon the commission of a crime," *id.*, 340 U.S. at 45, the Court noted that, in stark contrast to the situation in *Lipke*, the government in *Sanchez* was seeking to collect the Marihuana Tax Act levy "by a judicial proceeding with its attendant safeguards," *ibid.* Those safeguards are present here as well. Subjecting Heredia to subchapter IV did not deprive him of his right to due pro-

cess. Accordingly, Heredia's trial lawyers were not deficient for failing to seek dismissal on that ground.

### 3.  *Vagueness.*

No person may "be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954). Unless First Amendment values are implicated, however, a person to whose conduct a statute patently applies may not challenge it for vagueness. *See Chapman v. United States*, 500 U.S. —, 111 S. Ct. 1919, 1929, 114 L.Ed.2d 524, 540 (1991); *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

In support of his argument that subchapter IV is impermissibly vague, Heredia conjures up various examples that clearly do not apply to him or his circumstance in this case. Thus, he argues that the definition of "dealer" in section 139.87(2), Stats., is not clear because it does not indicate whether the weight of the controlled substances includes potential contaminants or cutting agents. He also contends that the subchapter does not indicate whether the tax applies to a person who, although he or she may have once possessed more than seven grams of a controlled substance in the past, currently possesses less than seven grams. Heredia also asserts that the statute is not clear as to how the tax stamps are to be affixed to packages of less than one gram, noting that "[m]ost likely" a person who purchases 100 grams of cocaine "will not sell the 100 grams in one sale." He further claims ambiguity because the statute does not reveal whether "the failure to pay the tax [is] a continuing crime or a separate offense for each day, week, or month that the tax is not paid."

Although Heredia's supposititious excursions into the theoretical would make interesting discourse for law

professors, they have no bearing on whether, as applied to him, the statute gave fair notice of what was prohibited. Accordingly, because payment of the tax imposed by subchapter IV does not implicate First Amendment values, he may not escape the consequences of conduct that falls within the statute's core prohibitions merely because there may be some circumstances where application of the statute would be unclear.

In sum, the failure by Heredia's trial lawyers to seek dismissal of the tax count on constitutional grounds was not ineffective assistance of counsel.

**B.** *Sufficiency of the Evidence.*

Heredia argues that there was insufficient evidence to convict him of possession of cocaine with intent to deliver because, he alleges, the State failed to establish any link between him and the cocaine discovered at the house. Thus, he contends, his conviction of that crime as well as for bail-jumping, which was based on the cocaine and the tax convictions, must be reversed. We disagree.

Our review of a jury verdict is sharply circumscribed.

> [A]n appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

489

*State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-758 (1990) (citations omitted). Here, the cocaine was found in a house in which the jury could have reasonably found that Heredia lived—important documents belonging to Heredia were found at the house together with letters addressed to him there. Additionally, as already noted in part I of this opinion, Calderon told one of the officers executing the search warrant that, according to the officer's testimony, "cocaine trafficking occurred in [the house's basement] and often times [Heredia] would go down there to do transactions." As we have already pointed out in footnote 1, this unobjected-to hearsay could have been properly considered by the jury. *See Schlichting v. Schlichting*, 15 Wis. 2d 147, 160, 112 N.W.2d 149, 156 (1961) (unobjected-to-hearsay is admissible for its truth). There was plainly sufficient evidence for a reasonable jury to find that Heredia possessed cocaine with intent to deliver. Additionally, since there was also no constitutional infirmity to his conviction under subchapter IV of chapter 139 of the Wisconsin Statutes, his conviction for bail-jumping must be affirmed.

*By the Court.*—Judgment and order affirmed.