STATE of Wisconsin, Plaintiff-Respondent,

v.

Darryl J. HALL, Defendant-Appellant.†

Court of Appeals

*No. 94–2848–CR. Submitted on briefs July 10, 1995.—Decided September 14, 1995.*

(Also reported in 540 N.W.2d 219.)

†Petition to review granted.

851

854

For the defendant-appellant the cause was submitted on the briefs of *Jerome F. Buting* of *Buting & Williams, S.C.* of Brookfield.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *G.M. Posner-Weber*, assistant attorney general.

Before Dykman, Sundby, and Vergeront, JJ.

VERGERONT, J.   Darryl Hall appeals from a judgment convicting him of two counts of delivering cocaine base within 1,000 feet of school premises, second or subsequent offense, contrary to §§ 161.41(1)(cm)4,[1] 161.48 and 161.49, STATS., and two counts of failing to comply with Wisconsin's drug tax stamp law, contrary to §§ 139.87—139.95, STATS.

Hall raises the following issues on appeal: (1) whether the "affix and display" provision of the drug tax stamp law violated his right against compelled self-incrimination guaranteed by the Wisconsin and United States Constitutions; (2) whether the "payment" provi-

---

[1] All references to § 161.41(1)(cm)4, STATS., are to the 1991-92 statutes unless otherwise indicated.

sion of the drug tax stamp law, as implemented by the Wisconsin Department of Revenue, violated his right against compelled self-incrimination guaranteed by the Wisconsin and United States Constitutions; (3) whether his convictions for both the delivery of cocaine base counts and the drug tax stamp counts violated his constitutional right to be free from double jeopardy; (4) whether the term "premises" in the penalty-enhancing provisions of § 161.49(1), STATS., is unconstitutionally vague; (5) whether the statutory disparity in potential penalties for cocaine base and cocaine powder offenses that existed at the time of Hall's sentencing violated his right to equal protection under the Wisconsin and United States Constitutions; (6) whether his due process rights were violated by the delay between his first offense and when he was charged; (7) whether the pretrial photographic identification procedure was impermissibly suggestive; and (8) whether the trial court erroneously exercised its discretion in allowing testimony of Hall's threat to kill a police officer. We reject each of Hall's arguments and affirm the judgment of conviction.

## BACKGROUND

The charges against Hall arose out of two purchases of cocaine base from Hall by Wayne Strong, a City of Madison police officer working undercover in the Town of Madison. Strong was working under the supervision of Detective Tim Ritter. At some time prior to May 11, 1993, Strong met with Ritter to discuss an individual, known on the street as "Charlie Brown," who was suspected of dealing drugs. Charlie Brown was an alias used by Hall. Ritter informed Strong that Hall was a short, stocky, light-skinned black male approximately twenty-five years of age.

858

At some time after 7:00 p.m. on May 11, 1993, Strong and a confidential informant went to a townhouse in the Town of Madison to set up an under-cover purchase of cocaine base from Hall. The townhouse was within 1,000 feet of a school property line. After stationing himself in an upstairs bedroom of the townhouse, Strong instructed the informant to look for Hall. Hall eventually arrived at the townhouse and, with the informant's assistance, Strong purchased two ounces of cocaine base from Hall. Strong turned the cocaine base over to Detective Ritter later that evening.

The following day, Strong met with Ritter. Ritter showed Strong a single mug shot of Hall and asked Strong if he recognized the person in the photograph. Strong stated that it was the person from whom he had purchased cocaine base the previous evening.

On the evening of June 3, 1993, Strong returned to the townhouse in the Town of Madison and, with the informant's assistance, purchased another two ounces of cocaine base from Hall. At some point during the purchase, Hall asked Strong whether he was a "cop" and insisted that Strong lift up his shirt so he could check for a wire. Strong refused to lift up his shirt. Strong testified, over defense counsel's objection, that Hall stated that if he discovered Strong were a police officer, Strong would be murdered or killed. After the purchase, Strong returned the cocaine base to Ritter. Criminal charges were issued against Hall on June 21, 1993.

Following a jury trial, Hall was convicted on all counts. The trial court sentenced Hall to two consecu-tive thirty-year prison terms for the two counts of delivering cocaine base within 1,000 feet of school premises, second or subsequent offense, and to two con-secutive three-year prison terms for the two drug tax

stamp counts, to run concurrent with the two thirty-year terms. Further facts will be stated below as necessary.

## "AFFIX AND DISPLAY" PROVISION OF THE TAX STAMP STATUTE

Hall contends that Wisconsin's drug tax stamp statute violates his right against compelled self-incrimination by requiring a dealer of controlled substances to affix and display tax stamps on his or her controlled substances as evidence of payment of the tax. He argues that the act of affixing and displaying the tax stamps is an incriminating testimonial communication that he or she is knowingly and intentionally dealing in a particular quantity of unlawful drugs.

Under the drug tax stamp statute, an occupational tax is imposed on drug dealers,[2] to be paid immediately upon acquisition or possession of a controlled substance. Section 139.88, STATS. The tax is paid by purchasing stamps from the Department of Revenue (the "payment provision"). The tax stamps must then be affixed to and displayed on the drugs (the "affix and display provision") as evidence of payment of the tax. Section 139.89, STATS. Failure to pay the tax exposes the dealer to a possible five-year prison term, a fine of

_____

[2] The term "dealer" is defined under § 139.87(2), STATS., as follows:

"Dealer" means a person who in violation of ch. 161 possesses, manufactures, produces, ships, transports, delivers, imports, sells or transfers to another person more than 42.5 grams of marijuana, more than 5 marijuana plants, more than 14 grams of mushrooms containing psilocin or psilocybin, more than 100 milligrams of any material containing lysergic acid diethylamide or more than 7 grams of any other schedule I controlled substance or schedule II controlled substance. "Dealer" does not include a person who lawfully possesses marijuana or another controlled substance.

not more than $10,000, or both. Section 139.95(2), STATS.

Acquisition of tax stamps does not create immunity for a dealer from criminal prosecution. Section 139.90, STATS. However, dealers are not required to provide any identifying information in connection with the purchase of the stamps. Section 139.91, STATS. Moreover, no information obtained by the department may be used against a dealer in any criminal proceeding unless that information has been independently obtained, except in connection with a proceeding involving possession of a schedule I or schedule II controlled substance on which the tax has not been paid or in connection with taxes due. *Id.*

■

Both the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution prohibit compelled self-incrimination. Whether or not a statute violates these constitutional provisions presents a question of law that we review *de novo. See State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989).

The United States Supreme Court addressed the right against compelled self-incrimination in the context of the government's ability to tax illegal conduct in *Marchetti v. United States*, 390 U.S. 39 (1968). There, the defendant was convicted of violating federal wagering statutes which required persons engaged in professional gambling to pay an occupational tax and to register with the Internal Revenue Service. The defendant sought to arrest judgment on the ground that these statutory obligations violated his Fifth Amendment right against self-incrimination because they significantly enhanced the likelihood that those who complied with the provisions would be successfully

861

prosecuted for violating state and federal anti-gambling laws.

The Court first stated that wagering is "an area permeated with criminal statutes" and that those engaged in wagering "are a group inherently suspect of criminal activities." *Marchetti*, 390 U.S. at 47. Then, relying on the fact that information obtained as a consequence of compliance with the federal wagering tax statutes was readily available to assist the efforts of state and federal authorities in prosecuting gambling violations, the Court concluded:

> In these circumstances, it can scarcely be denied that the obligation to register and to pay the occupational tax created for petitioner "real and appreciable," and not merely "imaginary and unsubstantial," hazards of self-incrimination. Petitioner was confronted by a comprehensive system of federal and state prohibitions against wagering activities; he was required, on pain of criminal prosecution, to provide information which he might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant "link in a chain" of evidence tending to establish his guilt.

*Marchetti*, 390 U.S. at 48 (citations omitted; footnotes omitted). The Court held that the defendant's plea of the Fifth Amendment privilege provided a complete defense to a prosecution for failure to register and pay the occupational tax on wagers as required by the statutes. *Id.* at 60-61.

In *State v. Heredia*, 172 Wis. 2d 479, 493 N.W.2d 404 (Ct. App. 1992), *cert. denied*, 113 S. Ct. 2386 (1993), we distinguished *Marchetti* in holding that the payment provision of Wisconsin's drug tax stamp statute, on its face, does not violate a defendant's constitutional

862

right against compelled self-incrimination. *Id.* at 485, 493 N.W.2d at 407. We concluded that, unlike in *Marchetti*, the drug tax stamp statute "both contemplates and permits the anonymous payment of the tax," *id.* at 485, 493 N.W.2d at 407, and, therefore, "does not subject those who comply with its provisions to compelled self-incrimination," *id.* at 484, 493 N.W.2d at 407. In so concluding, we relied on § 139.91, STATS., which provides that "[d]ealers may not be required to provide any identifying information in connection with the purchase of stamps." *Id.* at 485, 493 N.W.2d at 407. In *Heredia*, we did not address the statute's affix and display provision. We do so now.

As an initial matter, we address the State's assertion that Hall does not have standing to challenge the constitutionality of the affix and display provision of the tax stamp statute. A party has standing to challenge a statute if the statute causes that party injury in fact and the party has a personal stake in the outcome of the action. *Racine Steel Castings v. Hardy*, 144 Wis. 2d 553, 564, 426 N.W.2d 33, 36–37 (1988). The State takes the position that because there is no evidence that Hall ever purchased any tax stamps, he cannot argue that he was injuriously affected by the law. We disagree.

The crux of Hall's position is that compliance with the provisions of the tax stamp statute will provide the State with evidence that will be used to facilitate a tax stamp purchaser's conviction for a controlled substance-related offense. Hall was left with two alternatives: (1) comply with the statute's provisions and incriminate himself, or (2) not comply with the statute's provisions and be punished for exercising his

863

right against self-incrimination. Either alternative would result in injury in fact.

In *Leary v. United States,* 395 U.S. 6 (1969), the Court rejected a similar standing argument made in the context of a Fifth Amendment challenge to the Federal Marijuana Tax Act. The Court stated:

> The aspect of the self-incrimination privilege which was involved in *Marchetti,* and which petitioner asserts here, is . . . the right not to be criminally liable for one's previous failure to obey a statute which required an incriminatory act. . . . His admission at trial that he had indeed failed to comply with the statute was perfectly consistent with the claim that that omission was excused by the privilege. Hence, it could not amount to a waiver of that claim.

*Leary,* 395 U.S. at 28. *See also Marchetti,* 390 U.S. at 51 ("Petitioner is under sentence for violation of statutory requirements which he consistently asserted at and after trial to be unconstitutional; no more can here be required.").

Following the reasoning of *Leary* and *Marchetti,* we conclude that because Hall was prosecuted for a tax stamp violation, and maintains that his failure to comply with the tax stamp statute's provisions stemmed from his fears of self-incrimination, Hall has standing to challenge the affix and display provision of the statute.

We conclude that the affix and display provision would violate a defendant's right against compelled self-incrimination if the tax stamps affixed to a stamp purchaser's drugs may be used as evidence against him or her in a criminal prosecution. First, like the federal

wagering tax statutes in *Marchetti*, the drug tax stamp statute affects "an area permeated with criminal statutes" and is aimed at individuals "inherently suspect of criminal activities," as only those dealing in controlled substances are exposed to the statute. *See Marchetti*, 390 U.S. at 47. Second, dealers are required, on pain of criminal prosecution, to affix and display tax stamps upon acquisition of a controlled substance. *See id.* at 48. Third, tax stamps would be readily available to assist the State in establishing that the defendant knew that the substance in his or her possession was a controlled substance. Under our controlled substances statutes, the State must prove that the defendant knew or believed that the substance was a controlled substance. *See* WIS J I—CRIMINAL 6000 (NOTE ON THE KNOWLEDGE REQUIREMENT IN CONTROLLED SUBSTANCE CASES). While § 139.91, STATS., prohibits the use of information obtained by the Department of Revenue in administering the tax, the presence of affixed tax stamps is not "information obtained by the department." The statute does not contain any provision prohibiting the State from using the tax stamps to prove a taxpayer's knowledge of the nature of the controlled substance. *See Marchetti*, 390 U.S. at 47 ("Evidence of the possession of a federal wagering tax stamp . . . has often been admitted at trial in state and federal prosecutions for gambling offenses.").

The State argues that since § 139.91, STATS., prohibits the use of any identifying information obtained by the department in a criminal prosecution, the fact that stamps are affixed to the drugs does absolutely nothing to prove to whom the drugs belonged or who purchased and affixed the stamps. However, while the State may not be able to prove who purchased the

stamps,[3] the State does not explain why the presence of an affixed stamp cannot nevertheless be used to establish the defendant's knowledge of the nature of the controlled substance.

Although the affix and display provision is unconstitutional if read to permit the State to use a drug tax stamp as evidence in a criminal proceeding, it is well established that we will construe a statute to preserve its constitutionality if it is at all possible to do so within the intent of the legislature. *See State v. Bertrand*, 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 (Ct. App. 1991). In *Marchetti*, the Court refused to preserve the constitutionality of the wagering statutes by placing restrictions on the use of information required by the statutes. The Court reasoned that doing so would violate one of the central purposes of the statutes—providing information to prosecutors. Here, however, the legislature clearly did not enact the drug tax stamp statute to provide prosecutors with assistance in prosecuting dealers. In *Heredia*, we interpreted the statute as contemplating anonymity. Therefore, placing restrictions on information gained through compliance with the drug tax stamp statute will not contradict the legislative intent. We will con-

---

[3] While under § 139.91, STATS., the State may not be able to prove who purchased the tax stamps using information obtained by the Department of Revenue, we note that under § 139.88, STATS., the tax is due upon acquisition or possession of the controlled substance and that, under § 139.89, STATS., "[n]o person may transfer to another person a stamp or other evidence of payment." Thus, it appears that nothing would prevent the State from asking the jury to infer from the presence of affixed stamps on discovered drugs that it was the defendant who purchased the stamps in compliance with the law.

strue the drug tax stamp statute to preserve its constitutionality by interpreting § 139.91, STATS., to preclude the State from using *any* information gained as a result of a tax stamp purchaser's compliance with the statute, including the presence of affixed tax stamps, as evidence in a subsequent drug prosecution. With this construction, the affix and display provision of the drug tax stamp statute does not violate Hall's right against compelled self-incrimination.

This approach has been adopted in other jurisdictions. In *Zissi v. State Tax Comm'n*, 842 P.2d 848 (Utah 1992), the petitioner argued that compliance with Utah's drug tax stamp statute would require him to provide evidence against himself in violation of his federal and state rights against compelled self-incrimination in two ways: (1) by requiring a dealer who complies with the statute to provide incriminating information that may be turned over to the state or local prosecutor; and (2) by providing vital evidence in a prosecutor's case against a dealer who complies with the statute and affixes stamps to his illicit drugs because such acts show knowledge that the items are controlled substances. *Zissi*, 842 P.2d at 857.

The *Zissi* court held that the statute was facially unconstitutional under *Marchetti* because the stamp purchaser would reasonably suppose that compliance would make information available to prosecuting authorities and that the information would provide a link in a chain of evidence to establish the individual's guilt of a drug-related offense. *Zissi*, 842 P.2d at 857. However, the court concluded:

> [W]e are mindful of our power to save a statute from unconstitutionality by imposing on it a limiting construction. This power permits us to uphold an

867

otherwise questionable statute by tailoring it to conform to the Constitution, which is what we must presume the legislature intended. . . . [W]e hold that the statute must be read to preclude prosecutors from using any information gained as a result of a stamp purchaser's compliance with the tax statute to establish a link in the chain of evidence in a subsequent drug prosecution. With such a reading, the scope of the resulting immunity is broad enough to satisfy the requirements of the Fifth Amendment.

*Zissi*, 842 P.2d at 857 (citations omitted). *See also State v. Durrant*, 769 P.2d 1174, 1183 (Kan.), *cert. denied*, 492 U.S. 923 (1989); *State v. Davis*, 787 P.2d 517, 523 (Utah Ct. App. 1990); *State v. Garza*, 496 N.W.2d 448, 454 (Neb. 1993).[4]

We agree with the rationale of these jurisdictions and hold that the affix and display provision of the drug tax stamp statute, as construed, does not violate a defendant's right against compelled self-incrimination.

---

[4] We note that Congress cured the constitutional deficiencies of the federal wagering tax statutes by enacting 26 U.S.C. § 4424 subsequent to the United States Supreme Court's decision in *Marchetti v. United States*, 390 U.S. 39 (1968). *See Sisson v. Triplett*, 428 N.W.2d 565, 572 n.7 (Minn. 1988); *United States v. Jeffers*, 621 F.2d 221 (5th Cir. 1980). In *Marchetti*, the Court noted that evidence of the possession of a federal wagering tax stamp has often been admitted at trial in state and federal prosecutions for gambling offenses. *Marchetti*, 390 U.S. at 47. 26 U.S.C. § 4424(c)(1) now provides in part that "any stamp denoting payment of the special tax under this chapter . . . shall not be used against such taxpayer in any criminal proceeding."

## PAYMENT PROVISION OF THE TAX STAMP STATUTE AS IMPLEMENTED

Hall contends that the payment provision of the drug tax stamp statute, as implemented by the Department of Revenue, violates his right against compelled self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution.

In *Heredia*, we held that the payment provision of the drug tax stamp statute, on its face, does not violate a defendant's constitutional right against compelled self-incrimination because it contemplates and permits anonymous payment. *Heredia*, 172 Wis. 2d at 485-86, 493 N.W.2d at 407. Hall has not presented any evidence to show that the statute is implemented by the Department of Revenue in a manner that is inconsistent with that contemplated by the statute on its face. Although Hall attached a Department of Revenue form entitled "Drug Tax Purchase Order" to his brief, he does not state that this was part of the record and we have not found it in the record. Even if it were part of the record, the form, which apparently is to be filled out by a purchaser of tax stamps, does not require the applicant to provide any identifying information, such as the applicant's name, address or social security number. We therefore reject Hall's challenge to the payment provision of the drug tax stamp statute.

## DOUBLE JEOPARDY

Hall claims that the crime of delivering cocaine is a lesser included offense of the tax stamp violation and, therefore, he was exposed to multiple punishments for

the same offense in violation of his constitutional right to be free from double jeopardy.

■

Whether a defendant's convictions violate his or her double jeopardy rights under the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution is a question of law that we decide *de novo. State v. Sauceda*, 168 Wis. 2d 486, 492, 485 N.W.2d 1, 3 (1992).

■

The double jeopardy language in both constitutions is designed, in part, to protect against multiple punishments for the same offense. *Sauceda*, 168 Wis. 2d at 492, 485 N.W.2d at 3. In Wisconsin, we engage in a two-part analysis to determine whether multiple punishments may be imposed upon the defendant. *Id.* at 493, 485 N.W.2d at 4. First, we apply the "elements only" test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932). This test was codified under § 939.66(1), STATS. It provides that if each charged offense is not considered a lesser included offense of the other, then we should presume that the legislature intended to permit cumulative punishments for both offenses. The second part of the analysis involves an inquiry into other factors which evidence a contrary legislative intent. *Sauceda*, 168 Wis. 2d at 495, 485 N.W.2d at 5.

■

An offense is a lesser included offense if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the greater offense. *State v. Eastman*, 185 Wis. 2d 405, 413 n.2, 518 N.W.2d 257, 260 (Ct. App. 1994).

870

We conclude that delivering cocaine base is not a lesser included offense of the tax stamp violation. The crime of delivering cocaine base requires the State to prove that the defendant actually delivered what he or she knew or believed to be cocaine base. *See* WIS J I—CRIMINAL 6020. The tax stamp statute, by contrast, only requires the State to prove that the individual is a "dealer" within the meaning of § 139.87(2), STATS., and that the individual has not paid the appropriate tax on the controlled substance. The term "dealer" under § 139.87(2) includes an individual who possesses seven grams or more of a schedule I or schedule II controlled substance. Because the delivery offense requires a showing of delivery and the tax stamp offense does not, the delivery offense is not a lesser included offense of the tax stamp offense, and we presume the legislature intended to permit cumulative punishments for both offenses.

There is no indication that the legislature did not intend to permit cumulative punishments for both offenses and Hall does not point to any factor that would suggest otherwise. Accordingly, Hall's right to be free from double jeopardy was not violated.

## PENALTY ENHANCER—VOID FOR VAGUE-NESS CHALLENGE

Hall contends that § 161.49, STATS.,[5] which sets out enhanced penalties for distribution of a controlled substance if the crime occurs within 1,000 feet of any

---

[5] Section 161.49(1), STATS., provides in part:

If any person violates s. 161.41(1)(cm) . . . by distributing . . . a controlled substance . . . while on or otherwise within 1,000 feet of any private or public school premises . . . the maximum term of

private or public school premises, is void for vagueness. Specifically, Hall argues that a person of ordinary intelligence seeking to avoid the statute's penalties would not know whether the term "premises" means the school building itself or includes the land on which the school building is located. At trial, Detective Ritter testified that the Lincoln School property line is 970 feet from the front door of the townhouse in which the delivery of cocaine base took place.

The void for vagueness concept rests upon the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. *State ex rel. Hennekens v. City of River Falls Police & Fire Comm'n*, 124 Wis. 2d 413, 420, 369 N.W.2d 670, 674 (1985). Before a criminal statute may be invalidated for vagueness, we must be convinced beyond a reasonable doubt that there is some uncertainty or ambiguity in the description of the conduct prohibited that prevents a person of ordinary intelligence who wants to obey the statute from determining what is prohibited conduct. *State v. Corcoran*, 186 Wis. 2d 616, 632, 522 N.W.2d 226, 232 (Ct. App. 1994).

The term "premises" is not defined in the statute. However, a person of ordinary intelligence is well apprised of its meaning. The AMERICAN HERITAGE COLLEGE DICTIONARY 1080 (3d ed. 1993) defines "premises" to include "land and the buildings on it." BLACK'S LAW DICTIONARY 1180 (6th ed. 1990) defines "premises" to include "land with its appurtenances and structures thereon." We conclude that the statute provides fair

imprisonment prescribed by law for that crime may be increased by 5 years.

warning that the region contemplated by the statute begins at the school property line.[6]

## EQUAL PROTECTION

Hall argues that the disparity in potential sentences for defendants convicted of dealing cocaine base and defendants convicted of dealing cocaine powder that existed at the time of his sentencing violates his right to equal protection under the Wisconsin and United States Constitutions.[7] Hall, who is an African-American, alleges that the disparity in sentences has a disparate impact on African-Americans. The trial court denied Hall's motion to dismiss on this ground.

The constitutionality of a statute is a question of law that we review *de novo*. *See State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989). Statutes are presumed to be constitutional. *State v. Bertrand*, 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 (Ct. App. 1991). Hall must prove the statute's unconstitutionality beyond a reasonable doubt. *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973).

At the time of Hall's sentencing, the potential penalty for delivery of more than 40 grams of cocaine base

---

[6] Hall also argues that § 161.49, STATS., does not adequately guard against arbitrary and discriminatory enforcement of the statute by police officers because no standards exist to tell police officers what is included in the definition of "premises." However, because we have concluded that a person of ordinary intelligence knows what is meant by the term "premises," we reject this argument.

[7] The Wisconsin Constitution's equal protection clause is the substantial equivalent of its federal counterpart. *State v. McManus*, 152 Wis. 2d 113, 130, 447 N.W.2d 654, 660 (1989).

was a fine of between $25,000 and $1,000,000 and a period of incarceration of between 10 and 30 years. Section 161.41(1)(cm)4, STATS., 1991-92. At the same time, the potential penalty for delivery of more than 40 grams of cocaine powder was a fine of between $1,000 and $500,000 and a period of incarceration of between 1 and 15 years. Section 161.41(1)(c), STATS., 1991-92. This disparity was eliminated by 1993 Wis. Act 98, effective December 25, 1993. Section 161.41(1)(cm)4 currently provides that the potential penalty for delivery of more than 40 grams of either cocaine base or cocaine powder is a fine of not more than $500,000 and a term of imprisonment not to exceed 30 years.

■ Hall argues that the sentencing dichotomy should be subject to a strict scrutiny analysis because the classifications are based on race. However, to invoke strict scrutiny, Hall must prove the existence of purposeful racial discrimination. *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979). Absent such a purpose, the existence of a differential impact of a law upon one race is subject to the rational basis analysis. *Rogers v. Lodge*, 458 U.S. 613, 617 n.5 (1982).

■ Hall has not presented any evidence to show that the legislature was motivated by a discriminatory purpose in creating the sentencing distinction between cocaine powder and cocaine base. While Hall cites a comparison by the Wisconsin Sentencing Commission of conviction rates for cocaine base-related offenses which demonstrates that African-Americans are disproportionately exposed to the harsher penalties for cocaine base-related offenses, numerical impact alone will not establish discriminatory intent in a facially neutral law. *See, e.g., United States v. Angulo-Lopez*, 7

874

F.3d 1506, 1509 (10th Cir. 1993), *cert. denied*, 114 S. Ct. 1563 (1994); *United States v. Reece*, 994 F.2d 277, 278 (6th Cir. 1993).

In the absence of evidence indicating a discriminatory intent, we subject the legislative sentencing scheme to a rational basis analysis. Under that analysis, the classification will be upheld if there is any rational basis to support it. *State v. Roling*, 191 Wis. 2d 755, 765, 530 N.W.2d 434, 438 (Ct. App. 1995).

The circuits of the federal court of appeals have consistently upheld a distinction in penalties for cocaine base and cocaine powder offenses at the federal level.[8] The distinction is justified on the grounds that cocaine base is more addictive, more dangerous, highly potent, and can be sold in smaller quantities with lower unit prices than cocaine powder. We join these jurisdictions and conclude that a rational basis existed for imposing harsher penalties for engaging in the delivery of cocaine base than for delivery of cocaine powder.

Hall's reliance on *State v. Russell*, 477 N.W.2d 886 (Minn. 1991) is incorrect. In *Russell*, the Supreme Court of Minnesota held that a statutory distinction drawn between a quantity of crack cocaine possessed and a quantity of cocaine powder possessed violated

---

[8] *See, e.g., United States v. Lewis*, 40 F.3d 1325, 1344-45 (1st Cir. 1994); *United States v. Thomas*, 900 F.2d 37, 39-40 (4th Cir. 1990); *United States v. Avant*, 907 F.2d 623, 627 (6th Cir. 1990); *United States v. Lawrence*, 951 F.2d 751, 755 (7th Cir. 1991); *United States v. Buckner*, 894 F.2d 975, 978 (8th Cir. 1990) (due process challenge); *United States v. Malone*, 886 F.2d 1162, 1166 (9th Cir. 1989); *United States v. Angulo-Lopez*, 7 F.3d 1506, 1509 (10th Cir. 1993), *cert. denied*, 114 S. Ct. 1563 (1994); *United States v. King*, 972 F.2d 1259, 1260 (11th Cir. 1992); *United States v. Cyrus*, 890 F.2d 1245, 1248 (D.C. Cir. 1989).

the equal protection guarantee of the Minnesota Constitution. However, the rational basis test under the Minnesota Constitution differs from the rational basis test under the United States Constitution and the Wisconsin Constitution. The Minnesota Constitution requires a reasonable connection between the actual, and not just the theoretical, effect of the challenged classification and the statutory goals. *Russell*, 477 N.W.2d at 889 ("we have been unwilling to hypothesize a rational basis to justify a classification, as the more deferential federal standard requires"). The *Russell* court held that the testimony before the legislature did not establish a substantial and genuine distinction between those inside and outside the class. In contrast, under the United States Constitution and the Wisconsin Constitution, it is the court's obligation to locate or construct a rationale that might have influenced the legislature and we need not find that evidence supporting the rationale was presented to the legislature. *Bertrand*, 162 Wis. 2d at 418, 469 N.W.2d at 876.

Hall contends that the fact that the legislature has since eliminated the disparity in potential sentences for cocaine base and cocaine powder is an indication that the disparity that existed at the time Hall was sentenced lacked a rational basis. We disagree. The fact that 1993 Wis. Act 98 made the penalties for offenses relating to cocaine base and cocaine powder the same does not mean that a distinction between cocaine base and cocaine powder was patently arbitrary and bore no rational relationship to a legitimate government interest. The State has wide discretion to create classifications and all doubts must be resolved in favor of the reasonableness of the classification.

*State v. Hermann*, 164 Wis. 2d 269, 283, 474 N.W.2d 906, 911 (Ct. App. 1991).

## DELAY IN CHARGING

According to Hall, the delay between the commission of his first criminal offense on May 11, 1993, and the filing of criminal charges on June 21, 1993, violated his constitutional right to due process. We disagree.

When a defendant seeks to avoid prosecution based on prosecutorial delay, the defendant must show actual prejudice arising from the delay and that the delay arose from an improper motive or purpose such as to gain a tactical advantage over the accused. *State v. Wilson*, 149 Wis. 2d 878, 904-05, 440 N.W.2d 534, 544 (1989) (no due process violation in sixteen-year delay between date of offense and filing of complaint).[9]

---

[9] Hall concedes that under *United States v. Marion*, 404 U.S. 307, 324 (1971), a defendant must establish both actual prejudice and intentional delay to gain a tactical advantage in order to establish a due process violation. However, Hall argues that states are free to grant greater due process protection than the minimum established by the United States Supreme Court and asserts that we have done so in *State v. Strassburg*, 120 Wis. 2d 30, 36, 352 N.W.2d 215, 218 (Ct. App. 1984). It is true that in *Strassburg*, we stated the two-part test in the disjunctive—prejudice *or* intentional delay to gain a tactical advantage. However, in *State v. Wilson*, 149 Wis. 2d 878, 904-05, 440 N.W.2d 534, 544 (1989), the Wisconsin Supreme Court, consistent with *Marion*, stated that a defendant must establish both parts of the two-part test in order to establish a due process violation. We are bound by decisions of the Wisconsin Supreme Court. *State v. Kircher*, 189 Wis. 2d 392, 398, 525 N.W.2d 788, 790 (Ct. App. 1994).

Assuming for purposes of argument that Hall was prejudiced by the delay,[10] Hall's due process argument fails because he has not made any showing that the delay arose from an improper motive or purpose. Hall speculates that "there is no other reason for the State to have instituted a second undercover sting absent a desire to increase the potential penalties against Hall." However, he does not offer proof of this, nor does he explain why a delay due to an ongoing narcotics investigation is impermissible in the first place.

## PHOTOGRAPHIC IDENTIFICATION PROCEDURE

Hall argues that the pretrial photographic identification procedure under which Officer Strong identified him was impermissibly suggestive. The test for determining whether an out-of-court photographic identification is admissible or, on review, whether the out-of-court identification was properly admitted involves a two-part test. *Powell v. State*, 86 Wis. 2d 51, 65, 271 N.W.2d 610, 617 (1978). First, the court must determine whether the identification procedure was impermissibly suggestive. *Id.* Second, it must decide whether, under the totality of the circumstances, the out-of-court identification was reliable despite the suggestiveness of the procedures. *Id.* Once the defendant meets his or her burden of showing that the identification was the product of an impermissibly sug-

---

[10] Hall contends that he was prejudiced because he committed additional crimes after the date of his first offense and because the informant who acted as the middleman in the drug transactions was not available to him after he was charged.

gestive procedure, the burden shifts to the State to show the identification was nonetheless reliable under the totality of the circumstances. *Id.* at 65-66, 271 N.W.2d at 617.

A single photo array is not *per se* impermissibly suggestive. *Kain v. State*, 48 Wis. 2d 212, 219, 179 N.W.2d 777, 782 (1970). Each case must be examined in light of its facts. *Id.* The *Kain* court stated that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.*

Even if the single photograph procedure were impermissibly suggestive, the totality of the circumstances indicates that Strong's identification of Hall was reliable. Officer Strong testified that he viewed Hall during both drug transactions. With respect to the first drug transaction, Strong viewed Hall when Hall entered the townhouse and proceeded up the stairs to confirm that the informant knew Strong. After leaving briefly, Hall came back upstairs and stopped at the top of the stairway and made some remark about the substance being crack cocaine. At this point, the cocaine base was delivered directly from Hall to Strong in exchange for $2,000. Strong and Hall conversed for approximately three to four minutes.

Strong testified that he is nearsighted and usually wears glasses. Strong also testified that he did not identify a particular feature of Hall. However, he also testified that the transaction took place shortly after 8:00 p.m. on May 11, that there was sunlight coming from the bedroom window, that the light was on in the

bedroom and, at least for two or three minutes, Hall was only 15-20 feet away. Strong also testified that although he could not identify one particular feature of Hall, there was no one feature that told him this was Hall because "it was evident to me that it was . . . the same person."

Strong was shown a single photograph of Hall the following day and, according to his testimony, immediately recognized the person in the photograph as the person from whom he had purchased the cocaine base. We conclude that the trial court did not err in admitting the out-of-court identification.

### EVIDENCE OF HALL'S THREAT TO KILL A POLICE OFFICER

During direct examination of Officer Strong regarding the June 3, 1993 drug transaction, Strong testified that after he went downstairs to retrieve $100 he had overpaid Hall, Hall asked him if he was a police officer. Defense counsel anticipated that Officer Strong was going to repeat his assertion, made at the hearing on the motion to suppress the out-of-court identification, that Hall had threatened to kill Strong if he was a "cop." Defense counsel requested a sidebar and argued that this testimony was inadmissible on the ground that its probative value was substantially outweighed by its unfair prejudicial effect. The trial court denied defense counsel's request, reasoning that the testimony could establish Strong's heightened apprehension which, in turn, could bolster his identification testimony.

The admission of evidence is a matter within the trial court's discretion. *State v. Roberson*, 157 Wis. 2d

447, 452, 459 N.W.2d 611, 612 (Ct. App. 1990). Under § 904.03, STATS., relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Evidence is unduly prejudicial when it threatens the fundamental goals of accuracy and fairness of the trial by misleading the jury or by influencing the jury to decide the case upon an improper basis. *State v. DeSantis*, 155 Wis. 2d 774, 791-92, 456 N.W.2d 600, 608 (1990).

We conclude that the trial court did not erroneously exercise its discretion in admitting this testimony. A central issue in the case was whether Officer Strong correctly identified Hall as the seller in the drug transaction. The trial court could reasonably decide that the testimony of Hall's threat was highly probative of Strong's level of attention during the drug transaction. *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) (one factor to consider in assessing reliability of identification is the witness's degree of attention). Strong's testimony was presumably damaging. But we cannot conclude that the trial court erroneously exercised its discretion in determining that the testimony's probative value was not substantially outweighed by its prejudicial effect.

*By the Court.*—Judgment affirmed.